**A. Z. HANDFORD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16810.**

United States Court of Appeals
Fifth Circuit.

Nov. 13, 1957.

As Modified on Denial of Rehearing
Jan. 7, 1958.

Vance Custer, Charles H. Kirbo, Bainbridge, Ga., Custer & Kirbo, Bainbridge, Ga., for appellant.

Joseph H. Davis, Asst. U. S. Atty., Macon, Ga., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

A. Z. Handford, a Negro, was tried in the Thomasville Division of the District Court for the Middle District of Georgia on a one-count indictment for illegal possession of nontaxpaid whiskey, in violation of 26 U.S.C. § 5008(b) (1) and § 5642. He was found guilty and sentenced to two years imprisonment.

Appellant specifies as errors: "(1) the evidence does not support the verdict, and the motion for judgment of acquittal should have been granted; (2) because of the prejudicial and inflammatory argument of the district attorney, a new trial should be granted". The alleged "prejudicial and inflammatory argument" consisted of (a) an appeal to racial prejudice and (b) argument that

too many of the prosecutor's friends and friends' children get run over up and down the highways.

■ A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously. But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all [1] and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer. In this case zeal outran fairness. The argument of the United States attorney in the district court was improper, prejudicial, and constituted reversible error.

■ The Court's conclusion is directly related to the indecisiveness of the evidence supporting the verdict. In a close case, appeals to prejudice take on added weight. When the scales of justice may tip either way and a man's liberty lies in the balance, courts must be especially vigilant to protect an accused. It is necessary therefore to take a long, hard look at the record.

One witness testified: Warren Johnson, Sheriff of Baker County. At the conclusion of his testimony the government rested. Counsel for defendant moved for a judgment of acquittal and put on no witnesses.

Johnson testified that he and two other officers drove up to Handford's yard at 9:15 at night and parked between Hand-

1. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314.

ford's garage and home. There was a tractor about fifteen feet away. Handford came over to the car. While he was walking toward the car, his wife, Lucy Mae, and a Negro named Jesse Lee Carlton came out of a nearby garage, ran over to the tractor, and began breaking five one-gallon jugs sitting in front of the tractor. One jug was rescued and placed on the floor of Johnson's car; the four other jugs were broken.

Handford went in the house to change his shoes. "About that time a load of niggers gathered up there from the juke-joint * * *. The other niggers were standing there as thick as flies". The unbroken jug vanished. When Handford returned to the car, Johnson said, "You done gone to stealing liquor besides just selling it". Handford denied the theft. Johnson handcuffed Carlton and Lucy Mae Handford together. He did not handcuff A. Z. Handford and there is testimony indicating that Handford drove off with the sheriff under the impression that he was to sign the bond for his wife and Carlton.

Handford denied possession or ownership of any of the whiskey, asserted that the whiskey belonged to his wife and to Carlton, and insisted that he had just driven up when the officers arrived. Johnson testified that he "could not swear" that Handford had not just driven up, "because I did not see him but he told me he did".

The whiskey "found to have been in Handford's possession" consisted of (1) the damp remains of four broken one-gallon jugs, (2) one full one-gallon jug that disappeared under circumstances that can be described only as mysterious, (3) a small wet funnel used to "pour it up", found on the ground, and (4) a tablespoon of whiskey later discovered in a five-gallon jug. The Sheriff testified that this five-gallon jug was *"in"* a tool shed; he testified also that it was *"twenty feet away from A. Z.'s tool shed"*.

The property where the whiskey was found is open to the street and therefore readily accessible to many persons. Several Negro-owned houses face defendant's house. No fences separate the lots. Handford's cafe, "juke-joint", is 150 feet away from the house and the area between the cafe and the house is habitually used by other persons than the defendant. The whole area is unenclosed.

Lucy Mae Handford and Jesse Lee Carlton pled guilty. A. Z. Handford went to trial. At the conclusion of the evidence, defendant's attorney moved for a judgment of acquittal. The court overruled the motion. After the verdict but before sentence, Handford's attorney filed a motion for a judgment of acquittal and, in the alternative, for a new trial. The district judge denied the motion but, later, upon the hearing of a motion for a new trial, reduced the sentence from two and one-half years to two years. Thereupon, defendant filed an appeal to this Court from the judgment and sentence.

It may well be, as a matter of law, that there is sufficient evidence to support a verdict of guilty. United States v. Woods, 7 Cir., 1948, 168 F.2d 255; Lambert v. United States, 5 Cir., 1955, 226 F.2d 602, certiorari denied 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 855; Crockett v. U. S., 5 Cir., 1956, 234 F.2d 560; Chastain v. U. S., 9 Cir., 1956, 237 F.2d 422. But it is clear to this Court that the evidence was far from conclusive and that the jury might have found that Handford did not in fact have such dominion and control over the whiskey as to constitute possession. "Mere knowledge of the commission of the crime by another does not prove guilt. Nor does mere presence at the scene. Possession must be proved by some showing of dominion and control". McClain v. U. S., 5 Cir., 1955, 224 F.2d 522, 525. See also Bergedorff v. U. S., 10 Cir., 1929, 37 F.2d 248; Brady v. U. S., 8 Cir., 1930, 39 F.2d 312; Toney v. U. S., 1933, 62 App.D.C. 307, 67 F.2d 573; United States v. Mazzafalana, 2 Cir., 1936, 80 F.2d 826,

827; Vick v. U. S., 5 Cir., 1954, 216 F.2d 228.

The case was close. The evidence was circumstantial.[2] The government used one witness. Whatever that witness saw, he saw at night. Under the circumstances—the delicate balance of material facts, the setting, the prestige of the prosecutor and the sheriff—any unfair argument or prejudicial appeal would affect a juror's thinking. "It is fair to say that the average jury, in a greater or a less degree, has confidence that these obligations [to refrain from improper methods], which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none". Berger v. United States, 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633.

■ The record shows frequent use of the term "nigger" in the sheriff's testimony, and the district court's charges to the jury show that the racial question entered into the argument. *To the extent shown by the record,*[3] however, the injection of racial prejudice was cured by the district court's firm, clear instructions to the jury: "that has nothing to do with this case, couldn't possibly have anything to do with it" and if Handford did not do what he is charged with doing "then he ought to be acquitted regardless of whether he is male or female or what his color may be".

■ We base our holding squarely on the argument of the United States attorney that he had "too many of his friends" and "his friends' children get run over, up and down the highways".

The toll of deaths and injuries by automobile is a matter of grave concern to all. But it has nothing to do with buying or not buying federal tax stamps to put on four or five jugs of whiskey. It has nothing to do with showing that A. Z. Handford had possession of the whiskey jugs. It had nothing to do with the congressional enactment of the sections of the United States Code which Handford is charged with violating. The effect of the prosecutor's argument was to associate Handford, in the minds of the jurors, with drunken drivers on the highway.

Handford was indicted only for possession of nontaxpaid whiskey. That is all. He is not charged with responsibility for highway accidents—generally or to the prosecutor's friends or to the children of the prosecutor's friends. Such an argument is an improper appeal: to the sympathy of jurors for highway accident victims, especially children; to the natural prejudice of jurors against drunken drivers responsible for highway accidents, especially accidents to children. There is no inferable connection between the case against Handford and the highway accident toll. "In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence. If the case against defendant had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might

---

2. "Circumstantial evidence can indeed forge a chain of guilt and draw it so tightly around an accused as almost to compel the inference of guilt as matter of law. Again, circumstantial evidence may forge the chain and draw it tight by legally justifiable, rather than absolutely compelling, inferences. In each case, however, where the evidence is purely circumstantial, the links in the chain must be clearly proven, and taken together must point not to the possibility or probability, but to the moral certainty of guilt. That is, the inferences which may reasonably be drawn from them as a whole must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence." Kassin v. U. S., 5 Cir., 1937, 87 F.2d 183, 184.

3. If the record was incomplete or inaccurate, the way was open to correct the record under Rules 39(b) (1), Federal Rules of Criminal Procedure, 18 U.S.C. and Rule 75(h), Federal Rules of Civil Procedure, 28 U.S.C. We cannot go beyond the record.

be reached." Berger v. United States, 1935, 295 U.S. 86, 89, 55 S.Ct. 629, 633.

Appellant's counsel objected to the prosecutor's argument as "prejudicial", and the district judge directed the United States attorney "not to go into that", but there was no softening of the impact by instructions to the jury to disregard this particular argument.

The judgment is reversed and the case is remanded for a new trial.