R. L. MACK, Joe E. Williams, Jr., Charlie F. Jackson and James D. Dowers, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17437.

United States Court of Appeals Fifth Circuit.

Aug. 6, 1959.

John J. Sullivan, Savannah, Ga., Robert L. Heinhardt, Tifton, Ga., for appellants.

W. Howard Fowler, Asst. U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Mack was, during the school year 1956–1957, principal of Tift County Industrial High School, and appellants Williams, Jackson and Dowers were students at this school receiving training allowances from the United States Veterans Administration. In Count One of

the indictment, under which Mack and Williams were convicted of violation of Title 18 U.S.C. § 1001,[1] said appellants were charged with having certified to the Veterans Administration false and fraudulent statements as to the enrollment and attendance of said Williams during the month of April, 1957.[2] Other counts covered the attendance of appellants Jackson and Dowers in identical language, except the name of the student covered by each individual count.[3] All four appellants were convicted and sentenced, and have appealed assigning four specifications of error, all having to do with the admission over objection of certain testimony of witnesses Treadwell and Allen. We agree that the testimony given by the witnesses was improperly admitted and was calculated to be highly prejudicial to the interests of appellants.

It was the practice of those in charge of this school of approximately 1800 students (less than one per cent of whom were veterans) that each veteran would execute a form each month answering Yes or No to the question: "Are you still enrolled in and pursuing your course?"; and that Principal Mack would sign a certificate covering subparagraphs 1 through 4 of the indictment, Footnote 2 supra, and upon these certificates the veterans would receive the payments to which they were entitled under the Acts of Congress popularly known as the G. I. Bill of Rights. The specific falsity charged against each of the veterans was that he certified that he was still enrolled in and pursuing his course. And the specific falsity charged against Principal Mack was that he falsely certified that, during the period covered by the indictment, each veteran was enrolled in and pursued his approved program, that his conduct and progress were satisfactory "according to the established standards and practice of this institution," and that his program of education

1. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined * * *."

2. Count One of said indictment reads as follows:

"That on or about the 1st day of May, 1957, within the Valdosta Division of the Middle District of Georgia, in a matter within the jurisdiction of the Veterans Administration, an agency of the United States, Joe Williams, Jr. and R. L. Mack did knowingly and willfully make a false writing and document, knowing the same to contain false, fictitious and fraudulent statements of material facts, to-wit, the said Joe Williams, Jr. and R. L. Mack at the time and place aforesaid, executed VA Form VB7—1996a, entitled 'Veterans Administration Monthly Certification of Training—Accredited Courses and Institutional On Farm Courses,' for the period from April 1, 1957 to April 30, 1957 in which said form the said Joe Williams, Jr. falsely certified in Section A thereof that he was still enrolled in and pursuing his course, and in which the said R. L.

Mack falsely certified in Section B thereof as follows:

"(1) During the period shown above this veteran was enrolled in and pursued his approved program of education and training.

"(2) His conduct and progress are satisfactory according to the established standards and practices of this institution.

"(3) His program of education and training and the pursuit thereof continue to meet the requirements of applicable VA Regulations.

"(4) There have been no changes in the veteran's enrollment status as certified to the VA at the time of his enrollment.

"The said Joe Williams, Jr., and R. L. Mack then and there well knew said statements to be false in that the said Joe Williams, Jr., was not enrolled in and pursuing his course as was certified in Sections A and B of said VA Form, as aforesaid; all in violation of 18 USC 1001."

3. There were nine counts in all and appellant Mack was convicted on all of them. But, in the others, the individuals indicted with him did not appeal and discussion of the three counts where both parties appealed will suffice to furnish a pattern for all counts.

and training and the pursuit thereof continued to meet the requirements of applicable V.A. Regulations.

■ At the base of each of the statements alleged to be false lay the queries, what were the established standards and practices of this school and what were the requirements of applicable V.A. Regulations? Without evidence from which these fundamental questions could be answered, it was not possible for the jury to determine from proof of the conduct of the individual defendants whether that conduct had violated those practices and regulations. The burden was on the Government to make this proof by competent testimony.

Neither of these basic essentials was established by any competent proof offered by the Government. The Regulations of the Veterans Administration were undoubtedly in writing and susceptible of easy proof. The established standards of the school were provable by some writing or set of writings, by tradition, by custom and usage, or by other legal methods of proof. At all events, the Government made no effort to prove the ingredients of the standards it claimed had been broken by any competent evidence.

■ Instead, it adopted the expedient of asking Treadwell, an official of the Veterans Administration, and Allen, County Superintendent of Schools, questions calling for the conclusion on the part of each witness as to whether, based upon his knowledge of facts not placed before the jury and answers contained in the certificates referred to, said answers were true or false.[4]

Thereupon the government attorney asked Treadwell whether the standard practices of the Tift County Industrial High School were the standards and practices which governed the Veterans Administration. When defendants objected upon the ground that the Veterans Administration official could not testify as to what the standards of the Tift County Board of Education were and that the witness had no authority to speak for the Veterans Administration, the court overruled the objection and the witness was permitted to state: "* * * the regulations contemplate that the Vet-

---

4. The following excerpts from colloquies between court and counsel will illustrate the practice. While Treadwell was on the stand, the following took place:

"Mr. Fowler [Assistant United States Attorney]:

"Q. Based upon the attendance record and information that R. L. Mack gave you in his statement as to the proper termination date of those veterans, are those statements true or false?

"Mr. Wright [Attorney for defendant]:

"That would be a conclusion on the part of this witness—I'm objecting to Mr. Treadwell stating that is true or false. That would be a conclusion on the part of Mr. Treadwell because he wasn't there. Also, there has been no evidence of what an approved course or program of training is. This witness could not testify whether that was true or false. As to whether his 'conduct and progress are satisfactory according to the established standards of practice of this Institution', he certainly can't testify what the established practices of this school was, therefore he can't testify whether it was true or false,—would be a conclusion on his part. And third, 'his program of education and training and pursuit thereof continued to meet the requirements of applicable VA. Regulation'. There has been no evidence in this case of what the applicable VA Regulations require. And who would certify to 'there has been no changes in enrollment status * * *

* * * * * *

"There has been no evidence as to what those requirements are, therefore this witness can't testify whether those statements are true or false. That is a question for the jury.

"The Court:

"Go ahead. I'll let him answer it.

"Mr. Fowler:

"All right, Mr. Witness, I am referring now to Joe Williams, I am referring to all the veterans in the indictment * * * Now as to those veterans, * * * based on the principal's statements to you as to their termination date and the attendance records of that school which you reviewed only with Principal R. L. Mack, are the statements made in those forms in sections A and B signed by R. L. Mack, Principal and each of these veterans, are those certifications true or false?

"Mr. Treadwell:

"A. They are false."

erans Administration will follow the established standards and practices of that Institution as it is enforced by its governing body and accredited associations." Upon cross-examination, Treadwell testified that the Veterans Administration relied on the "standard fixed by the accredited associations, as administered by the local public officials." He further stated that he did not know what those standards were, and they were not proven by any other witness.

The witness Allen, Superintendent of Public Schools of the county, was questioned in similar manner.[5] Upon cross-examination, he responded that what he had given was merely his opinion "based on my feeling as an educator." He further answered that he knew of no prescribed standards which should be followed by school principals, or any rule of the Veterans Administration which would have furnished a standard of attendance.

It is, in our opinion, too plain for argument that this method of questioning witnesses and of attempting to prove basic and material elements of the crime charged was improper and without precedent.[6] We have dealt with the duty of government attorneys in somewhat similar situations in Ginsberg v. United States, 5 Cir., 257 F.2d 950; Nalls v. United States, 5 Cir., 240 F.2d 707; and Handford v. United States, 5 Cir., 249 F.2d 295, and see same case, 5 Cir., 260 F.2d 890; 359 U.S. 120, 79 S.Ct. 722, 3 L.Ed.2d 673.

Appellants argue that, without the improper testimony, the Government failed to make a case against them. We do not consider this point, as it was not mentioned among the Specifications of Error and no motions for verdicts of acquittal were made in the court below. The evidence referred to was wrongfully admitted and was intrinsically prejudicial. Whether the Government can make out a case without the use of such improper evidence can be determined on another trial.

Reversed and remanded.

---

5. "Q. Based upon the attendance of Joe Williams, Jr. in the Tift County Industrial High School, when, in your opinion should his training and Veterans Administration subsistence allowance have been terminated for failure to pursue his course of study? A. He should have been on the basis of attendance, that is his attendance being as it was in December, he should have been terminated as of the end of the third month. * * *

"I would say, of course, other factors would be involved where a Principal would have to consider, but considering the actual attendance here I would say 'yes' * * *.

\*  \*  \*  \*  \*  \*  \*

"Q. All right, Mr. Allen, I am going to read to you the statement contained in Government Exhibit No. 3, which are 3 through 7 which are the Veterans Administration form Monthly Certification of Training for each of these veterans which purports to be signed on May 1, 1957, by each of these veterans, and by R. L. Mack, Principal, for the period April 1, 1957 to April 30, 1957, in which the veteran certifies that in answer to the question: 'Are you still enrolled in and pursuing your course of training?' he answers 'Yes.' Is that certification true or false? \* \* \*"

After the objection had been overruled, the witness answered:

"It's false. The statement in its entirety.

"Q. I'll ask you to read the certification in section 'B' which purports to be signed by R. L. Mack, Principal, Item 1 and 2. Is that certification true or false as of the date it is purported to have been signed and for the period given in the certification?

"A. It would be false."

6. This is true whether it is considered as the introduction of expert or opinion evidence with respect to facts where such evidence is not competent, cf. Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, and 20 Am.Jur., Evidence, §§ 763 through 774; or amounts to the invasion of the province of the jury in giving an opinion on the ultimate facts in issue, cf. United States v. Roberts, 5 Cir., 1951, 192 F.2d 893, and cases cited at pages 898–899; and 20 Am.Jur., Evidence, § 782; or is simply basically unfair, cf. Demetree v. United States, 5 Cir., 1953, 207 F.2d 892.