Alton **TURNER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 25526.

United States Court of Appeals
Fifth Circuit.

Aug. 1, 1969.

Alan R. Schwartz, Miami, Fla., for appellant.

Morton Orbach, Asst U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty., for appellee.

Before BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.

WILLIAM M. TAYLOR, Jr., District Judge:

This is an appeal by Alton Turner from a two-count conviction based on two provisions of the Internal Revenue Code relating to the sale of narcotic drugs. Count I was a violation of 26 U.S.C. § 4704(a) for the sale of a quantity of heroin not from an original stamped package. Count II was for a violation of 26 U.S.C. § 4705(a) for the sale of heroin in the absence of a written order. Although Appellant raises several issues, only one need be discussed as it is dispositive of this appeal —whether the final argument of the Assistant U. S. Attorney was improper and had a prejudicial effect.

The charges against Appellant arise from an alleged transaction occurring on June 10, 1966 between Appellant and Tony Turner, a government informer. On that date, according to the government's case, Tony Turner met with agents of the Federal Bureau of Narcotics and with an officer of the Dade County Sheriff's office at Northwest First Court and Fifth Street. Prior to this meeting, Tony Turner was known to the government agents for approximately one month and had assisted them in the investigation of one previous case and testified in four others. At this meeting Tony Turner was searched and given $80.00 to attempt a purchase of the subject heroin. A Kell device, a small transmitter, was hidden on Turner's person. The group then proceeded to Appellant's home where the investigating party staked out. Appellant's residence was located behind a house which fronted on the street. The investigating party lost sight of Turner as he proceeded behind the front house and was therefore unable to view the alleged transaction. One of these officers did provide certain incriminating testimony based on what he heard via the Kell device. Turner likewise rendered incriminating testimony as to the transaction between him and Appellant wherein he allegedly purchased six heroin capsules without a prescription and in exchange for the $80.00.

Appellant attempted to prove that he had left Miami, Florida for Atlantic City, N. J. on June 5, 1966 and, therefore, could not have participated in the June 10, 1966 transaction. He was in fact arrested in Atlantic City in 1967. At the time of his arrest Alton Turner was employed as a surgical nurse in the Atlantic City General Hospital, and testified on cross-examination that narcotics were present in the operating room and that he had access to them. He additionally testified on cross-examination that he discussed business with a person known as the "Refugee" in Atlantic City in July, 1966 and admitted that there were rumors that the Refugee "was selling narcotics". However, the defendant denied any interest in the narcotics business and stated that the discussion with Refugee involved other lines of endeavor.

In his closing argument, the government's attorney stated,

There are various discrepancies in his testimony as to when this occurred, but it seems that he finally got a job in a hotel and then managed to get himself a job at a hospital, which inci-

dentally had available narcotics, and he had access to them.

Defense counsel immediately objected and the following dialogue occurred:

MR. FERRARA: Your Honor, I object to that statement as being prejudicial. There is no evidence regarding that he had anything to do with narcotics in the hospital. It is just prejudicial in the jury's minds.

THE COURT: Sustained.

MR. ORBACH: Your Honor, may I argue that?

THE COURT: No. I have sustained the objection.

MR. ORBACH: You have heard the testimony regarding the hospital. I know what I recall hearing and I will leave it up to you as to what you recall.

There is no dispute that the U. S. Attorney's statements were based on testimony in the trial. The rub is that the information provided by the U. S. Attorney's statements is wholly unrelated to the charge and thus had no tangible connection to the prosecution's case, except perhaps to have inflamed the jury with the unsupported inference that the defendant had been taking and selling narcotics from the operating room in New Jersey where he was working at the time of his arrest.

Resolution of the dispute caused by the U. S. Attorney's statements must be made in accordance with Handford v. United States, 249 F.2d 295, 296 (5th Cir. 1957).

A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously. But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer. In this case zeal outran fairness. The argument of the United States attorney in the district court was improper, prejudicial, and constituted reversible error.

These words were quoted with approval in Washington v. United States, 327 F. 2d 793 (5th Cir. 1964) and embody the doctrine of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934).[1]

---

1. The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a fair one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. Indeed, the case against Berger, who was convicted only of conspiracy and not of any substantive offense as were the other defendants, we think may properly be characterized as weak—depending, as it did, upon the testimony of Katz, an accomplice with a long criminal record. In these circumstances prejudice to the case of the accused is so highly probable that we are not justified in assuming its non-existence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached." 295 U.S., at 88–89, 55 S.Ct. at 633.

Because the conviction herein is based substantially, if not wholly, on circumstantial evidence and is not what is called a "strong" case for the prosecution, the United States Attorney breached his overriding obligation of fairness by making prejudicial statements unrelated to the charge before the court. This was improper and constituted reversible error.

Reversed and remanded for new trial.

THORNBERRY, Circuit Judge (dissenting):

With deference, I dissent. As the majority points out, "there is no dispute that the U. S. Attorney's statements were based on testimony in the trial." That testimony was elicited from appellant on cross-examination and was received into evidence without objection. It is as follows:

> Mr. Orbach: "Did you have any access to narcotic drugs while in the hospital?"
>
> Alton Turner: "There are narcotic drugs in the operating room."
>
> Mr. Orbach: "Did you have access to them."
>
> Alton Turner: "Yes, Sir."

The impropriety of the statements made by the U. S. Attorney is no altogether apparent. He neither misstated the facts nor injected into his argument extraneous matters not properly before the jury. See Luttrell v. United States, 5th Cir. 1963, 320 F.2d 462, 465; Orebo v. United States, 9th Cir. 1961, 293 F.2d 747, 749; United States v. Pepe, 2d Cir. 1957, 247 F.2d 838, 844. He only restated a fact already in evidence. Under the circumstances, this would seem to fall short of the degree of prosecutorial

misconduct generally required to vitiate a conviction. See, e. g., Rubin v. United States, 5th Cir. 1969, 414 F.2d 473, [No. 24552, July 23, 1969], pp. 4–5; Feguer v. United States, 8th Cir. 1962, 302 F.2d 214, 254; United States v. Persico, 2d Cir. 1962, 305 F.2d 534, 537.

In any event, I cannot agree that the statements, if improper, were prejudicial. It is doubtful that the prosecutor's reference to appellant's access to narcotics in the course of his lawful employment in the hospital in Atlantic City, New Jersey led the jury to conclude that appellant must therefore have sold narcotics in Miami, Florida on the occasion in question. Unlike Washington v. United States, 5th Cir. 1964, 327 F.2d 793, and Handford v. United States, 5th Cir. 1957, 249 F.2d 295, relied upon by the majority, the prosecutor has not reached outside the record and injected completely extraneous and highly prejudicial elements into the case.[1] Certainly the case, unlike Berger v. United States, 1935, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314, was not infected with "pronounced and persistent" misconduct by the prosecutor. Although the statements were, as the majority emphasizes, "unrelated to the charge," their potentially inflammatory effect, if any, was cured when the trial court sustained the objection immediately lodged by appellant's counsel. Inasmuch as the trial judge had on three occasions instructed the jury as to the effect of his rulings on objections, the court's action would seem sufficient to obviate the adverse *impact of the statements, even though the trial judge, who was not requested to do so, did not admonish the jury to disregard them.

1. In Handford v. United States, *supra*, the prosecutor imputed responsibility for highway accidents to a defendant charged with possession of non-tax-paid whiskey, stating that he had "too many of his friends" and "friends' children get run over, up and down the highways." 249 F.2d at 298.

In Washington v. United States, *supra*, the prosecutor stated, as a ground for convicting a defendant charged with unlawful possession of non-tax-paid whiskey, that the "people who live in the district have a right to be secure in their homes," and that if the Government undercover agent responsible for the defendant's arrest had been discovered, "his life could have been in danger." 327 F.2d at 794.