**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**C. George SWALLOW,**
**Defendant-Appellant.**

No. 73–1822.

United States Court of Appeals,
Tenth Circuit.

Argued July 9, 1974.

Decided Feb. 24, 1975.

Rehearing Denied April 2, 1975.

On this appeal Swallow urges four principal contentions, arguing that: (1) the trial court erred in not sustaining a motion to acquit due to insufficiency of the evidence, particularly stressing the lack of evidence as to counts II, III and IV; (2) the defendant was substantially prejudiced by improper closing argument by government counsel who stated certain facts as proven that were unsupported by proof; (3) the trial court erred in refusing to give two instructions requested by defendant, thereby denying a charge on his theory of defense; and (4) the ineffectiveness of defendant's representation by his trial counsel denied him a fair trial and his constitutional right to counsel. It is convenient to discuss the facts in the treatment of these issues, to which we now turn.

### 1. The Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence on all counts, while stressing particularly the lack of proof to support the convictions under counts II, III and IV. We must examine the proof tending to support the convictions since, after a verdict of guilty, the evidence must be viewed in the light most favorable to the government to determine whether there is sufficient substantial proof, direct and circumstantial, together with inferences reasonably drawn therefrom, on which the defendant might be found guilty beyond a reasonable doubt. United States v. Twilligear, 460 F.2d 79 (10th Cir.)

### A. Count I

As stated, count I charged Swallow with a willful attempt from late November, 1966, continuing through March 14, 1969, to evade and defeat payment of income taxes for 1953, 1954 and 1955. Generally the government proof was that there was a total assessment for 1953, 1954 and 1955 taxes against Swallow for $7,111. Swallow maintained on November 25, 1966, that he possessed only $37 in cash, owned no real estate or

Richard D. Lynton, Boulder, Colo., for defendant-appellant.

W. Allen Spurgeon, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Paul D. Cooper, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before SETH and HOLLOWAY, Circuit Judges, and TALBOT SMITH,* District Judge.

HOLLOWAY, Circuit Judge.

Appellant Swallow challenges his convictions under a four count federal income tax indictment. Count I alleged a willful attempt, from late 1966 until 1969, to evade and defeat payment of income taxes for the years 1953, 1954 and 1955. Counts II, III and IV accused him of a willful attempt to evade and defeat his federal income taxes for the years 1966, 1967 and 1968. The charges and convictions were all of violation of 26 U.S.C.A. § 7201. Defendant received a five year sentence, subject to release under 18 U.S.C.A. § 4208(b).

* Of the Eastern District of Michigan, sitting by designation.

personal property, except one term insurance policy he could not find, and was heavily in debt.[1] These representations were made in a statement of financial condition submitted to the IRS in November, 1966, and similar statements were made to IRS agents in December, 1968, and March, 1969.

There was government proof tending to show the following facts as to Swallow's assets. He and his wife had conveyed a residence in Aurora, Colorado, in 1961 to one Markey. Markey testified that Swallow told him he was in need of funds, and that he asked Markey to refinance the debt on the house with the understanding that the house would revert to Swallow when Swallow could assume the payments. Markey obtained a loan of $12,000, paid off an old mortgage and closing costs, and paid a balance of over $3,000 to Swallow. The conveyance to Markey had been recorded, but in November, 1961, a transfer back to Mrs. Swallow was not recorded, although shown in a notary's notebook. The Swallows never gave up possession of the property and as late as 1966 through 1968, they were making payments on Markey's loan. Markey made some tax payments, but was reimbursed for them by the Swallows.[2] In November, 1966, the balance due on the loan was $10,-001.29. The appraised value of the house at that time was about $16,000, leaving an equity of about $6,000.

Between 1961 and 1964 Swallow executed five chattel mortgages on personal property located at the residence. The mortgages recited a total consideration of $4,300, but Markey testified that he had never paid any consideration to Swallow and that he neither received nor used any of the property. Swallow mortgaged the same furnishings and appliances in 1963 to Mineralag Corpora-

tion, a corporation run by Swallow and discussed later, for $8,000 and in 1964 he mortgaged them to one Linkon for $12,-000. In 1964 Swallow executed an instrument purporting to sell the furnishings and appliances to Markey for $10, but Markey testified he never received any of the property.

There was also proof tending to show that Swallow held a Metropolitan Life Insurance policy with a net cash value of $500 on November 28, 1966. Swallow also had a Connecticut General Life Insurance policy with a net cash value of $1,299 on that date. The total asset value of these and another policy was over $1,900 on November 28, 1966—the date that the financial statement of Swallow was given to the IRS.

There was also, as detailed below, a considerable flow of cash received by Swallow in 1966, 1967 and 1968 from persons advancing or investing funds in the "Mineralag" venture. While the funds were not intended by those sending them to become assets of Swallow's, the record proof as to their handling permits the inference that they were treated by Swallow as subject to his disposition, without an intent to repay, for his business and personal expenditures. Thus the inference of the existence of substantial funds treated by Swallow as his assets is permissible, supporting also the inference of misrepresentation.

We must conclude that there was substantial evidence of misrepresentations by Swallow as to assets made in his statements to the Internal Revenue Service, which proof supports the conviction on count I.

### B. *Counts II, III and IV*

Counts II, III and IV charged a willful attempt to evade and defeat Swallow's income taxes for 1966, 1967

---

1. Swallow's financial statement claimed total assets of $37.00 in cash and total liabilities of over $640,000. He stated that he had a $5,000 term life insurance policy—"all term insurance, can't find policy." He stated that he owned no real estate, furniture and fix-

tures, or accounts receivable, and that his total assets were $37.00.

2. In 1968, Mrs. Swallow paid the taxes directly (Pl.Ex. 9–E).

and 1968 in violation of 26 U.S.C.A. § 7201. To sustain convictions of such offenses the prosecution must establish beyond a reasonable doubt that there was a substantial tax deficiency, willfulness and some affirmative act constituting an attempt to evade or defeat the tax. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882; Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

The principal government theory of a substantial tax deficiency argued to the jury was that the loans were not good faith loans to Swallow, and that there was no effort, nor any evidence to indicate any intent by Swallow, to repay the loans (R.X., 36–37). The trial court instructed on this theory (R.X., 70–71). When earnings are acquired, lawfully or unlawfully, without consensual recognition of an obligation to repay or restriction on their disposition, there is income. James v. United States, 366 U.S. 213, 219–220, 81 S.Ct. 1052, 6 L.Ed.2d 246. And this principle applies to loans obtained in bad faith and without an intent to repay them, as well as to money illegally obtained by embezzlement as in the *James* case. United States v. Rosenthal, 470 F.2d 837, 842 (2d Cir.), cert. denied, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975; United States v. Rochelle, 384 F.2d 748 (5th Cir.), cert. denied, 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135.

The proof of the government in support of the bad faith loan proposition tended to show the following facts in establishing the element of a substantial tax deficiency. Swallow was involved in a corporate enterprise in 1966, 1967 and 1968. He represented that he was engaged in agricultural research to produce a mineral fertilizer known as "Mineralag" for sugar beets and other crops. Acting mainly through a St. Louis stockbroker, Stocker, and a friend, Riley, individuals were induced during the years 1966 through 1968 to send money to promote Swallow's research. In all, more than fifty persons sent over $229,000 to finance the venture. Most of them had no personal contact with Swallow before sending in their money, although Swallow later met and corresponded with a number of them.

The payments were made in various ways. The checks were made out in many instances to a Mineral Aggregates Corporation or to Geyser Minerals Corporation, companies run by Swallow. In numerous instances the checks were made to Swallow individually. After the funds were received, notes were executed to the persons forwarding the funds. The notes were signed by Swallow "individually and as principal borrower & as president of Mineral Aggregates Corp.—cosignor."[3] Stock certificates were also issued to the persons forwarding the funds, which Swallow described in correspondence as a bonus or gratuity. Several exhibits admitted in evidence referred to the transactions as loans to Swallow, with the funds being reloaned by Swallow to the corporation for research work. See Plaintiff's Exhibit 72–G; Defendant's Exhibits I, K and M. In September and October of 1967 Swallow requested that all stock issued by Mineral Aggregates be exchanged for stock in a newly organized Nevada corporation, Geyser Minerals Corporation.

As stated, over $229,000 was received through various transactions of this sort in 1966, 1967 and 1968. Several of the persons forwarding the funds requested repayment, but no repayment was made to any of over 40 such witnesses who testified.[4] It was a permissible inference on this record to find that Swallow obtained loans in bad faith without an

---

**3.** Later Geyser Minerals Corporation was the corporate name used in lieu of Mineral Aggregates Corp.

**4.** In a letter dated October 22, 1969, that was written to one of the note-holders, Swallow declared a "moratorium" on all loan interest payments (Ex. 77–M). Later, in a letter dated June 25, 1971, Swallow evidenced little interest in fulfilling his outstanding financial obligations (Ex. 55–E).

intent to repay them, and thus had income.

Appellant Swallow relies on In re Diversified Brokers' Co., 487 F.2d 355 (8th Cir.), as showing that no tax liability attached to him. There, however, in a bankruptcy proceeding it was found that the taxpayer corporation alleged to owe taxes, and the lenders, had treated the transactions as bona fide loans, although the company could not repay all of them, and the holding of no tax liability was based on this finding. Id. at 357. A contrary finding against Swallow that the loans here were obtained in bad faith is supported by the record.

■ In addition to such proof about these funds received by Swallow, there was also government proof tending to show that Swallow benefited from approximately $34,000 in payments from the corporate accounts for personal expenditures on himself and his family. These items included clothing, his daughter's honeymoon expenses, payments on household repair, and numerous similar items. Almost all of these checks were drawn by Swallow's wife.

While Swallow did not testify, his counsel argued that these payments for the benefit of Swallow and his family were merely repayments by the corporations to Swallow on loans made to the companies by Swallow of the funds he had received from the some fifty persons who loaned the money to Swallow. However, as discussed below under proposition 3, there was no proof that such expenditures were intended or treated as repayments on advances by Swallow to the companies. Again the inference of substantial income is permissible on this record.

An expert witness for the government summarized the evidence on receipt of funds by Swallow under both the theory of bad faith loans and the theory that the personal expenditures from corporate funds were for Swallow's personal benefit. Using information from Form 1040's filed by Swallow for 1966, 1967 and 1968, this witness testified that there would be a tax liability of $116,736 for the three years if the total funds received by Swallow and the corporations were treated as his income.[5] The expert testified that the tax liability for the three years would be $6,025, if the personal expenditure items alone were treated as income to Swallow.

Considering the proof in the light most favorable to the government as we must in reviewing the convictions, we must conclude that there was substantial proof to sustain the first element of the § 7201 offense—a substantial income tax deficiency.

■ The second element of the offense is that of willfulness. In connection with it the government must prove beyond a reasonable doubt that there was an attempt to evade the tax, made voluntarily and intentionally and with the specific intent of evasion. United States v. Dowell, 446 F.2d 145 (10th Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 448, 30 L.Ed.2d 368. Such intent may be drawn from circumstantial evidence alone if the proof is substantial. United States v. Ramsdell, 450 F.2d 130 (10th Cir.); United States v. Brown, 446 F.2d 1119 (10th Cir.).

■ In connection with willfulness, the government proof tended to show a failure to report income for three successive years; that there were no books or records for either Mineral Aggregates Corporation or Geyser Minerals Corporation, as Swallow stated himself to the IRS agents (R.V., 20–21); and that there were substantial payments from corporate accounts to others for personal expenses of Swallow and his family.

---

5. This witness used information from Form 1040's filed by Swallow for the three years. These were forms where Swallow listed only his name, and that of his wife and two daughters. He detailed no income or deductions.

The witness, using the information on the forms, calculated the tax by treating Swallow as a married taxpayer filing separately and by using the standard deductions, no itemized deductions having been shown on the forms.

Swallow argues that his submission of the essentially blank Form 1040's could only have drawn the attention of the IRS, and that he also requested taxpayer assistance on the 1968 form. These circumstances are said to negative any inference of willfulness and require acquittal. We cannot agree. These are circumstances that were relevant on the factual question of willfulness, but they did not decide the matter. Willfulness involves a specific intent which must be proven by independent evidence, and which cannot be inferred from the mere understatement of income. See James v. United States, 366 U.S. 213, 221, 81 S.Ct. 1052, 6 L.Ed.2d 246. But here we are satisfied that there was substantial circumstantial evidence, as outlined above, to go to the jury on the question of willfulness, and that the proof is sufficient to sustain the factual finding against the appellant on the issue. See United States v. Rosenthal, 470 F.2d 837, 842–43 (2d Cir.), cert. denied, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975; United States v. Merrick, 464 F.2d 1087, 1092 (10th Cir., cert. denied, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314.

The final element of the § 7201 offense is an affirmative act constituting an attempt to evade or defeat the tax. The conduct must amount to a willful and positive attempt to evade a tax in any manner or to defeat it by any means. See Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418. It may involve concealment of assets or covering up sources of income, or handling one's affairs to avoid making records usual in transactions of the kind involved, or any conduct whose likely effect would be to mislead or conceal. Id. at 499, 63 S.Ct. 364. Again, the withholding of information on the forms, combined with the lack of records of the corporate accounts, as well as the expenditures from the corporate accounts directly to others to pay personal expenses for his family and himself, suffice to support the finding against Swallow as to affirmative acts to evade the tax.

In sum, we are satisfied that the required elements of the offenses as to all counts were supported by sufficient proof to sustain the convictions, viewing the evidence in the light most favorable to the prosecution as we must in reviewing jury verdicts of guilty.

## 2. The Prosecution's Closing Argument

Appellant Swallow argues that he was substantially prejudiced by improper closing argument by the prosecution which constitutes plain error, seriously affecting his substantial rights and requiring reversal. Specifically, he points to argument that the government had shown beyond any doubt that certain mining claims were not valid; that they were not owned by anyone; and were certainly not owned by defendant or the Mineral Aggregates Corporation or Geyser Minerals Corporation. On the contrary, defendant says there was proof of a number of recorded mining claims which were not invalidated and that at best the record shows only nonownership of certain claims, but no proof that appellant owned no claims. He argues there was violation of the high standard required of government counsel, relying on Handford v. United States, 249 F.2d 295 (5th Cir.), inter alia.

The mining claims were related to the legitimacy of operations of the Mineral Aggregates Corporation and its successor, Geyser Minerals Corporation. It is true that if the jury was led to believe that defendant and the corporations in fact owned no mining claims the credibility of defendant's research program to develop the "Mineralag" fertilizer was damaged, along with his claim of legitimacy of the loans having been obtained in good faith for the research project.

On this point, while the government did in fact submit some proof that the defendant had no interest in certain mining claims (R.VI., 114–118), the defense did submit evidence of other mining claims in which the defendant did have an interest. See Defendant's Exhibits V, W, X and Y. Thus the record does

not bear out the broad claim made in the prosecution's closing argument that defendant owned no interest in mining claims.

■ While the argument was unfounded and unfortunate, we cannot agree that reversal is justified. There was no objection as is generally required to premise the argument on appeal. Appellant says an objection would only have magnified the impact of the prosecution's argument. We are not persuaded that such an objection to a misstatement, and a resulting correction, would have had an adverse effect on the defense before the jury. The argument was not an inherently prejudicial one that could not be cured by objection and a curative retraction or instruction to disregard the statement. *E. g.,* United States v. Schwartz, 325 F.2d 355 (3d Cir.); Ginsberg v. United States, 257 F.2d 950, 955 (5th Cir.). Since the argument was one susceptible to correction by a contemporaneous objection, we feel we should follow the general rule that the issue may not be raised for the first time on appeal. Findley v. United States, 362 F.2d 921, 923 (10th Cir.); but see United States v. Ludwig, 508 F.2d 140 (10th Cir. 1974). We conclude there was no plain error affecting substantial rights that would call for reversal despite the absence of objection at trial. See Rule 52(b), F.R.Crim.P.

### 3. *The Defendant's Requested Instructions On the Loan Repayment Theory of Defense*

Appellant argues that he was prejudiced by rejection of two tendered instructions and that the charge given did not present his theory of defense. Appellant's defense theory regarding the money transactions included two aspects. The first was that all payments by the individuals sending in funds were bona fide loans evidenced by promissory notes. The second was that the checks drawn on the corporate accounts in payment of personal expenses of the defendant and his family constituted repayments of loans made by the defendant to the corporation.

Appellant points to letters in evidence, Defendant's Exhibits I and K, as showing that he had been loaned funds by numerous parties and that he had reloaned the funds to the corporations for the research project. And he refers to cross-examination of the prosecution's summary witness on the tax implications of repayment of a loan. The witness testified that there would be no tax liability if the sums spent on personal expenses were repayments of loans (R. IX, pp. 88–89). Thus appellant argues that there was evidence supporting a defense theory which would have shown that there was no taxable income to him, and which would have constituted a defense. Therefore appellant contends that the refusal of the two requested instructions on the theory was reversible error, relying on United States v. Noah, 475 F.2d 688 (9th Cir.), cert. denied, 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553, and similar cases.[6]

The court gave only an instruction on loans which essentially stated that a loan agreed to be repaid does not constitute gross income, but that where there is no good faith intent by the borrower to repay, such funds are taxable income.[7]

---

**6.** The refused instructions were defendant's requested instructions 28 and 29 which read as follows:

INSTRUCTION 28

You are instructed there is a distinction between a loan and forms of income (salary or dividends). For income tax purposes, a loan is not income. Likewise, repayment of a loan made by the accused to a corporation is not income.

Therefore, if you find that the transactions were loans or repayment of loans, then there is no income and, therefore, no tax deficiency.

INSTRUCTION 29

You are instructed that if you find that the accused borrowed money which he loaned to the corporations, then the repayment of these loans by said corporations would not be income even if these repayments were used for family expenditures.

**7.** The instruction on this question as given was as follows:

A loan which the parties to the loan agree is to be repaid does not constitute gross income as that term is defined by the

We must agree that the defendant was entitled to instructions on any theory of defense finding support in the evidence and the law, and that a refusal of such instructions is reversible error. Beck v. United States, 305 F.2d 595 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123; United States v. Noah, supra. Even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility, its presence requires an instruction on a theory of defense. United States v. Indian Trailer Corporation, 226 F.2d 595, 598 (7th Cir.); Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 617.

We cannot agree, however, that the proof here entitled defendant to the tendered instructions on the theory that the funds paid from the corporate accounts for family expenses were repayments of loans. We have noted Defendant's Exhibits I and K, also Plaintiff's Exhibit 72–G, which is of a similar nature. The relevant portions of the exhibits follow the tenor of Defendant's Exhibit I which stated:

We the undersigned as addressed have loaned money to Mr. George Swallow and he reloaned our loans made personally to him to Geyser Minerals Corporation for agricultural research in the application of a natural resource rock admixture plant nutrient product tradenamed Mineralag now "Seed Gro" . . . .

The exhibits support the proposition that the funds were loaned to Swallow and were reloaned by him to the corporations for the research project. However, defendant points to no proof, and we find none, that the numerous payments for personal expenditures benefit-ing Swallow and his family were intended for, or treated as, repayments on loans by Swallow to the companies, or related to such repayments. On this state of the record we must hold that the trial court was not obliged to give the additional tendered instructions. United States v. Hagen, 470 F.2d 110, 113 (10th Cir.), cert. denied, 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970. The charge given was sufficient.

### 4. The Claim of Ineffectiveness of Trial Counsel

Defendant asserts that by refusing to subpoena or call important witnesses, and by refusing to introduce important documentary evidence, his trial counsel effectively refused to present any meaningful defense and denied the defendant any semblance of a fair trial. On brief he argues that while the record cannot disclose what defense evidence was available but not presented, it is clear that the defense presentation at trial was minimal and virtually no defense at all, citing the absence of evidence as to the cost expended for extensive tests on the Mineralag product and the paucity of proof on defendant's ownership of mining claims, among other things.

While defendant relies on these deficiencies in the record, he also argues that the effectiveness of counsel issue involves matters requiring evidence outside the present record. He says the issue of ineffectiveness of trial counsel is raised here principally by way of preserving that issue for subsequent proceedings, should this appeal not prevail.

In this connection defendant refers to an earlier motion made in this

---

Internal Revenue Code. However, merely denominating a transaction as a loan is not sufficient to make it such; and where there is no good faith intent on the part of the borrower to repay the funds advanced, such funds are income under the income tax laws and are taxable as such. (R. X, pp. 70–71).

court for a limited remand, which was denied. The motion and a supporting brief urged us to follow a procedure used in the District of Columbia Circuit favoring the presentation of a claim of ineffectiveness of trial counsel by a motion for a new trial on the ground of newly discovered evidence. See, e. g., United States v. DeCoster, 159 U.S.App. D.C. 326, 487 F.2d 1197, 1204–05; United States v. Brown, 155 U.S.App.D.C. 177, 476 F.2d 933; United States v. Thompson, 154 U.S.App.D.C. 347, 475 F.2d 931. In that Circuit, if an appeal is pending and a District Judge indicates disposition to grant such a motion, a remand is made; if the motion is denied, an appeal therefrom is consolidated with the appeal from the conviction and sentence. See United States v. DeCoster, supra, 487 F.2d at 1205. Here, however, we have ascertained that no such motion has been made. Thus we have nothing before us calling for any action or expression on such procedure for developing a further record on the claim of ineffectiveness of trial counsel.

█ We do have before us appellant's claim of ineffectiveness of trial counsel as allegedly shown by the present record.[8] While it is true that the defense proof offered was limited and not extensive, we cannot speculate that additional or more convincing evidence was available and not presented, or that further evidence was available but was not sought by investigation by trial counsel (R. X, pp. 16, 63, 89–90). On the present record before us, we conclude that the claim of ineffectiveness of trial counsel is not supported. See Lorraine v. United States, 444 F.2d 1 (10th Cir.). The affirmance of this court is, of course, without prejudice to development of this claim by further proceedings.

Affirmed.

---

8. In the docketing statement submitted by trial counsel, this court was advised of the fact that appellant was not satisfied with trial counsel's actions. Trial counsel requested permission to withdraw to allow an impartial and separate attorney to review the record to insure defendant his day in court. This court then appointed new counsel who has briefed and argued the appeal.