**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Henry Donald EASON, Jr.,**
**Defendant–Appellant.**

**No. 90–8136.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1990.

**732**

Donald F. Samuel, Atlanta, Ga., for defendant-appellant.

Lawrence B. Lee, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before CLARK, Circuit Judge, HILL [*] and COFFIN [**], Senior Circuit Judges.

HILL, Senior Circuit Judge:

Henry Donald Eason, Jr., ("Eason Jr.") appeals his jury conviction on five counts relating to converting corn and tobacco pledged to the Farmers Home Administration ("FHA") as security in 1984 and 1985 and tobacco pledged to the FHA as security in 1986. Appellant contends that the trial court erred in: (1) permitting the government to introduce evidence of a nontestifying coconspirator's prior conviction;

(2) having done so, excluding evidence of that coconspirator's acquittals or of other coconspirators' acquittals; and (3) permitting the government to introduce hearsay statements of appellant's mother, father, and brother. We reverse.

## I. BACKGROUND

Eason Jr. received several loans from the FHA in the 1980's. The FHA provided him in 1981 with a farm ownership loan for $175,000 and a $10,000 equipment loan. In 1984, the FHA also provided appellant with a $23,340 emergency loan. As a part of the loan package, appellant executed a promissory note, a financing statement, and a security agreement granting to the FHA the "debtor's interest in ... [a]ll crops, annual, perennial, and other plants now planted, growing, or grown, or which are hereinafter planted or otherwise becoming growing crops ..." on appellant's property. Pursuant to the security agreement, the FHA required appellant to report the amount of crops sold and to provide the agency with the checks he received for selling the goods covered by the security agreement.

In 1984, 1985, and 1986, appellant also insured his corn, soybeans, and wheat through local insurance companies who served as agents of the Federal Crop Insurance Corporation ("FCIC"). The insurance coverage provided that if production fell below a certain level then FCIC would pay a percentage of the difference. The government alleged that Eason Jr. defrauded the FCIC by harvesting his crops and selling them to a local grain dealer, Donald Eason, Sr., ("Eason Sr.") under a fictitious name. The grain dealer allegedly would fill out various documents, including "weight tickets" and "settlement statements," in the name of the fictitious payee and make a check payable to the fictitious payee for the purchase of the crops. Eason Jr. would then negotiate the fictitious payee check at a local bank. He would only supply the documentation in his real

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Frank M. Coffin, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

name to the crop insurance adjuster to "verify" his claimed total production. The government also alleged that Eason Jr. defrauded the FHA in a similar manner in regard to corn sales. Eason Jr. allegedly failed to report his sales of corn to grain dealers in 1984 and 1985. The government further alleged that Eason Jr. defrauded the FHA by not reporting sales of his tobacco in his wife's name in 1984, 1985, and 1986.

Prior to Eason Jr.'s trial, the government had indicted other alleged coconspirators. Approximately two years before Eason Jr.'s trial, a jury convicted Eason Jr.'s father (Eason Sr.) and mother on certain counts involving efforts to defraud the FCIC by issuing checks in the name of a fictitious payee to an informant of the Department of Agriculture. Eason Jr.'s brother-in-law, Julian Rigby, was also tried for offenses very similar to Eason Jr.'s but was acquitted. A jury also acquitted a local banker accused of being a participant in the conspiracy because he allowed farmers to negotiate fictitious payee checks at his bank.

During the trial, Eason Jr. defended the charges dealing with selling crops in fictitious names by denying that he had actually sold any crops. He acknowledged receiving fictitious payee checks from his father/grain dealer, but testified that those checks represented gifts from his father and did not reflect a sale of crops. Julian Rigby also testified that Eason Sr., his father-in-law, had given him gifts in the same manner. Additionally, Eason Jr.'s two sisters testified about having received gifts from their parents in this manner. The elder Easons did not testify.

While cross-examining Julian Rigby, the prosecutor asked Rigby about the conviction of Eason Sr. The following dialogue transpired:

Q Are you aware of other circumstances where your father-in-law may have issued checks in names other than the person that sold grain at his dealership?

A He issued a check to my sister-in-law.

Q Well, I'm talking about other farmers in the area?

A My brother-in-law, both my brother-in-laws.

Q Yes, sir. In fact, he was charged by the United States with defrauding the Federal Crop Insurance Corporation in 1987 by issuing two checks?

MR. GARLAND: Objection, Your Honor, irrelevant.

MR. LEE: I believe he has brought up this two check routine.

THE COURT: Objection overruled.

MR. LEE: Thank you.

Q (Mr. Lee) Isn't that correct?

A You asked me if he was charged with—

Q I asked you first was he not charged with defrauding the Federal Crop Insurance Corporation—

A Yes, sir.

Q —by issuing two checks? One in the real name and one in a graveyard name?

A I think that's what the indictment said.

Q All right. And he was convicted for that; wasn't he?

A Yes, sir.

Q And he served time; didn't he?

A Yes, sir.

MR. LEE: Okay. That's all I have.

R5–636–37.

Subsequent to this dialogue, appellant's attorney asked for a limiting instruction [1] and moved for a mistrial on the basis that the evidence "was totally irrelevant and had no probative value, and its prejudice is such that the limiting instruction cannot

---

1. The court gave one, as follows:

THE COURT: Ladies and gentlemen, the fact that someone else may have been found guilty as a result of an offense is absolutely no evidence of guilt of this defendant. Each defendant is presumed to be innocent. And that presumption remains with him through-

out the trial, throughout the charge, the argument, and remains there unless you believe that the evidence convinces you beyond any reasonable doubt that he is guilty according to the evidence that you have heard, consistent with that charge or those charges brought against him in the indictment.

cure it." The district court denied the motion.

Also during the trial, the government introduced tapes of conversations that a government informant had with Eason Jr.'s father, mother, and brother in 1987. Eason Jr. was not a part of the conversations. He had previously stopped farming and was driving a gas truck for a living when the conversation took place. On the tapes, the informant spoke of his efforts to defraud the FCIC by misrepresenting his production and receiving fictitious payee checks from the Easons. The elder Easons and Eason Jr.'s brother also made numerous statements about fictitious payee checks and defrauding the FCIC and the FHA.

At the end of the trial, the jury convicted Eason Jr. on five counts of defrauding the FHA: the 1984 and 1985 corn counts and the 1984, 1985, and 1986 tobacco counts. The jury acquitted him on seven counts, including all FCIC counts and other FHA counts.

## II. ADMISSION OF EASON SR.'S CONVICTION

 The admission of Eason Sr.'s conviction must be assessed in the context of the applicable federal rules of evidence. Fed.R.Evid. 401 governs the admissibility of relevant evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. A trial judge may exclude relevant evidence where "its probative value is substantially outweighed by the danger of un-

fair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. We will not disturb the judge's determination absent an abuse of discretion. *United States v. Griffin,* 778 F.2d 707, 709 (11th Cir.1985).

In evaluating the judge's determination, it must be remembered that a jury "has an obligation to 'exercise its untrammeled judgment upon the worth and weight of testimony' and to 'bring in its verdict and not someone else's.'" *United States v. Sorondo,* 845 F.2d 945, 949 (11th Cir.1988) (quoting *United States v. Johnson,* 319 U.S. 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546 (1943)). Where evidence of a coconspirator's conviction is admitted, however, a jury may abdicate its duty. "The jury may regard the issue of the remaining defendant's guilt as settled and the trial as a mere formality." *Griffin,* 778 F.2d at 711. For this reason, the admission of guilty pleas or convictions of codefendants or coconspirators [2] not subject to cross-examination is generally considered plain error. *United States v. McLain,* 823 F.2d 1457, 1465 (11th Cir.1987) (citations omitted).[3]

The problem confronting us was not the result of inadvertence; no witness volunteered or "blurted out" the fact that Eason Sr. had been convicted. The government deliberately introduced Eason Sr.'s conviction. The government claims that it did so in order to impeach Julian Rigby and cites *United States v. King,* 505 F.2d 602 (5th Cir.1974) as authority for the introduction of that evidence. Even if the government's intent were solely to use the conviction to impeach Rigby rather than to use it as substantive evidence of Eason Jr.'s

---

**2.** The general rules regarding admission of guilty pleas and convictions apply to codefendants as well as to coconspirators. *Griffin,* 778 F.2d at 711.

The prejudice incurred by admission of a conviction may be even greater than that incurred by admission of a guilty plea because of the persuasiveness of the judgment of another group of unbiased fact-finders.

**3.** This circuit has recognized two exceptions to this rule. As we stated in *Griffin,* 778 F.2d at 710 n. 5:

Where codefendants who plead guilty during the course of trial begin to disappear from the defense counsel's table, the trial court may comment that codefendants have been excused from trial for legally sufficient reasons that should have no bearing on the remaining defendants' guilt or innocence. (citation omitted) Similarly, where a codefendant takes the witness stand, evidence of a guilty plea may be introduced to aid the jury in assessing the codefendant's credibility. (citation omitted)

guilt, which we doubt,[4] *King* clearly does not support the government's position. First, in *King* it was the *witness himself* whose conviction was introduced; that situation is a recognized exception to the general rule of non-admissibility.[5] Second, in *King* defense counsel divulged to the jury in opening argument that he intended to show that the government's chief witness could not be believed because he was "a convicted felon, who has got a record, as long as a man's arm." *Id.* at 605. The prosecutor anticipated this argument by having the witness admit on direct all of his prior convictions, one of which was his conviction for the fraud in that case. *Id.* at 606. In the instant case, defense counsel intimated no such intent. Third, *King's* defense counsel even brought out the charge on cross-examination of the witness by asking of what felonies the witness had been convicted and specifically asking whether the witness had been convicted of the charge in that case. *Id.* at 606 & n. 6. Defense counsel in the instant case, by contrast, *never* raised Eason Sr.'s conviction with a witness. *King* thus involves an entirely different factual scenario from the case at bar and provides no support for the introduction of Eason Sr.'s conviction. It is clear that a conviction other than that of the witness himself is not admissible on the issue of the witness's credibility. The government has cited no case contrary to this proposition,[6] and we have found no such case.[7]

Having deliberately introduced the offending evidence, the government falls back on the contention that the admission of Eason Sr.'s conviction was harmless error. If the admission of the conviction was harmless beyond a reasonable doubt, we will not disturb Eason Jr.'s conviction. *See United States v. De La Vega,* 913 F.2d 861, 867 (11th Cir.1990). Before we discuss the government's contention, we feel obliged again to remind the United States Attorney's office in this district as well as other federal prosecutors of the duties of a United States Attorney in a criminal prosecution:

> A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney

---

**4.** The government's claim seems disingenuous. In the defense's case in chief Rigby testified that Eason Sr. had written fictitious payee checks to him and to other family members as gifts. That Eason Sr. was convicted by another jury for writing fictitious payee checks to a *non-family* member does not impeach Rigby's testimony about gifts to *family* members. Furthermore, the jury already had before it tape recordings of conversations indicating that Eason Sr. had written fictitious payee checks to non-family members (including to the informant who had taped the conversations) in exchange for corn, and the government could have emphasized this evidence if it had chosen to do so.

**5.** *See supra* note 3 and accompanying text.

**6.** Besides *King,* the government cites *United States v. Baete,* 414 F.2d 782 (5th Cir.1969), for the admissibility of Eason Sr.'s conviction. Like *King, Baete* provides no support for admitting a conviction other than that of the witness himself on the issue of the witness's credibility. As in *King,* in *Baete* it was the *witness himself* whose guilty plea the prosecution introduced. Further, contrary to the facts of our case, defense counsel in *Baete* neither objected to the testimony nor requested a charge. In sum, *Baete* simply provides no support to the government.

Incredibly, the government also cites *United States v. Halperin,* 441 F.2d 612 (5th Cir.1971), and *United States v. Opager,* 589 F.2d 799 (5th Cir.1979), for the proposition that the admission of the conviction was a permissible attempt to impeach the testimony of Julian Rigby. *Halperin* involves the admission of records during the testimony of a government witness allegedly in order to impeach the testimony of a defense witness. The portion of *Opager* that the government cites concerns the defense's attempt to introduce certain business records to impeach the testimony of a government witness. These cases simply have no relevance to impeaching a witness by introducing a non-testifying coconspirator's conviction.

**7.** The Tenth Circuit has also attempted to discover any authority finding admissible the conviction of someone not testifying. It, too, found none: "We have found no case, and the Government has not cited one, in which a conviction other than that of the witness himself was properly admitted on the issue of his credibility." *United States v. Austin,* 786 F.2d 986, 992 (10th Cir.1986) (reversing the defendant's conviction where the government informed the jury that ten coconspirators had been previously tried and convicted for their parts in the conspiracy with which the defendants therein were charged).

owes an obligation to his client, to conduct his case zealously. But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo–American criminal law rests on the foundation: better the guilty escape than the innocent suffer.

*Dunn v. United States*, 307 F.2d 883, 885 (5th Cir.1962) (reversing conviction obtained in Southern District of Georgia, and quoting *Handford v. United States*, 249 F.2d 295, 296 (5th Cir.1957) [8]). Despite the violation of these duties through erroneous introduction of evidence or improper conduct by the prosecutor, we have affirmed convictions. *See, e.g., United States v. Alexander*, 835 F.2d 1406, 1410 (11th Cir. 1988) (finding that failure to suppress evidence seized during search was harmless error considering overwhelming evidence of defendant's guilt); *United States v. Dorsey*, 819 F.2d 1055, 1061–62 (11th Cir. 1987) (concluding that prosecutor's statement about the testimony of the defendant, who did not actually testify, did not have the intent or effect of referring to the defendant's decision not to testify and that hence no prejudice to defendant resulted), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988); *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir.1986) (where prosecutor elicited opinion testimony of two of government's witnesses as to meaning of statements made to them, court concluded that although better practice might have been for trial court to disallow the opinion testimony, admitting it was not

reversible error), *cert. denied*, 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986); *United States v. Cotton*, 770 F.2d 940, 948 (11th Cir.1985) (although prosecutor's statements in closing argument were totally irrelevant to guilt or innocence, they did not deprive the defendants of a fair trial; in addition, curative instruction was given and evidence of defendants' guilt was overwhelming); *United States v. Wyatt*, 762 F.2d 908, 912 (11th Cir.1985) (finding that government's introduction of plea of nolo contendere and conviction on similar charges, although error, was not egregious enough to taint the integrity of the trial), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986); *United States v. Tutt*, 704 F.2d 1567, 1569–70 (11th Cir. 1983) (determining that any prosecutorial misconduct by referring in opening statement to robber's mask as a KKK–type mask would be harmless error in light of immediate curative instruction, identification of defendant by several witnesses, and overwhelming evidence of defendant's guilt), *cert. denied*, 464 U.S. 855, 104 S.Ct. 174, 78 L.Ed.2d 156 (1983); *United States v. Clark*, 559 F.2d 420, 426 (5th Cir.1977) (finding that any error in admission of marijuana found during potentially illegal search was harmless in view of overwhelming evidence of guilt of defendants and bench rather than jury trial), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Nooks*, 446 F.2d 1283, 1289 (5th Cir.1971) (concluding that any error in admitting evidence of in-court identification of defendants by cashiers and customer of bank was harmless because circumstances were "so shrieking of guilt"), *cert. denied*, 404 U.S. 945, 92 S.Ct.

---

**8.** *Handford* elaborated further on the idea of "equal justice:"

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape

or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Handford*, 249 F.2d at 296 n. 1 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

299, 30 L.Ed.2d 261 (1971); *United States v. Kershner*, 432 F.2d 1066, 1071–72 (5th Cir.1970) (finding that even if government witness's voluntary remark about prohibited subject of testimony was error, it was harmless); *Fallen v. United States*, 220 F.2d 946, 948 (5th Cir.1955) (error in the admission of testimony of government witness that he knew two defendants, when substance of his testimony related to third defendant, was harmless), *cert. denied*, 350 U.S. 924, 76 S.Ct. 213, 100 L.Ed. 808 (1955).[9] In addition to the above cases, we might also cite appeals from other districts.

▪ One might think he is a better lawyer because he has transgressed a rule and "gotten away with it." He is not. That we find an error not to be reversible does not transmute that error into a virtue. The error is still an error. Urging the error upon the trial court still violates the United States Attorney's obligation to the court and to the public.

▪ In asserting harmless error, the government relies on the jury's acquittal of Eason Jr. on all counts of the FCIC fraud, the fraud that the government claims was the principal beneficiary of the double check and fictitious name scheme. The FHA was defrauded, the government asserts on appeal, merely because appellant failed to report his sales of corn and tobacco to the FHA; the double check and fictitious name scheme had nothing to do with the FHA. The two corn counts for which the jury convicted appellant, however, allege that appellant disposed of corn by selling it to M.J. Eason & Son and then converted the proceeds to his own use. Further, the government introduced evidence that appellant had received fictitious payee checks from his father/grain dealer. The indictment itself, as well as the government's evidence, thus necessarily establish that the alleged double check and fictitious name scheme were instrumental to the alleged FHA fraud. That the jury convicted appellant on the FHA corn counts and not on the FCIC counts does not establish that the introduction of Eason Sr.'s conviction was harmless error.[10]

▪ The three tobacco counts for which the jury convicted appellant present a different situation regarding whether the introduction of Eason Sr.'s conviction was harmless error. It is true that these counts do not relate to the alleged double check and fictitious name scheme. Instead, these counts involve the alleged sale of tobacco in Eason Jr.'s wife's name at Alma Bright Leaf Warehouse. Where a defendant is tried on several counts in one trial, highly prejudicial evidence is wrongfully introduced regarding some of those counts, and the jury convicts on those counts, we cannot know whether the jury was able to compartmentalize the evidence and the counts. That is, we cannot know whether the jury applied the improper evidence only to certain counts. *See United States v. Mann*, 557 F.2d 1211, 1217–18 (5th Cir. 1977). We thus cannot say beyond a reasonable doubt that the introduction of Eason Sr.'s conviction was harmless error in regard to the tobacco counts.

---

9. Error has not always been found harmless. *See, e.g., United States v. Jones*, 619 F.2d 494, 498–99 (5th Cir.1980) (reversing Southern District of Georgia conviction because of introduction of highly prejudicial evidence seized as result of illegal search); *United States v. Labarbera*, 581 F.2d 107, 110 (5th Cir.1978) (cumulative effect of numerous errors in Southern District of Georgia prosecutor's comments and in impeachment required reversal); *United States v. Warf*, 529 F.2d 1170, 1174 (5th Cir.1976) (Southern District of Georgia prosecutor's inappropriate assistance to witness in identifying defendant and his inappropriate question about defendant's prison record were prejudicial and mandated reversal); *Dunn*, 307 F.2d at 885–88

(reversing conviction in Southern District of Georgia because of improper and prejudicial nature of prosecutor's comment in opening statement that the case was replete with fraud and one of the most flagrant he had ever tried and comment in closing argument that all politicians take kickbacks on contracts such as these and because of prosecutor's statement that certain evidence constituted an admission of guilt on defendant's part).

10. It is also interesting to note the apparent conflict in the jury's verdict in that it convicted appellant on the FHA corn counts and yet acquitted him on the FCIC corn counts.

It is a basic tenet of our criminal jurisprudence that "guilt or innocence must be determined one defendant at a time without regard to the disposition of charges against others." *Griffin*, 778 F.2d at 711. We conclude that the introduction of Eason Sr.'s conviction was highly prejudicial and violated this tenet, and that the district court thus abused its discretion by admitting the conviction despite Fed.R.Evid. 403.[11] We thus REVERSE the conviction and REMAND the case for further proceedings.[12]

11. The error was not by the court, *sua sponte;* the district judge accepted the counsel and advocacy of the prosecutor. When conducting a conference on the motion for a mistrial, the district judge asked the prosecutor to comment, and the prosecutor argued for the admissibility of the conviction. Some of the comments included the following:

THE COURT: ... Mr. Lee, are you prepared to argue?

MR. LEE: ... The government would argue that most of the cases that Mr. Samuel has provided us deal with codefendant, and I assume an indicted co-conspirator. While Mr. [Eason Sr.]—while not an indicted coconspirator is alleged to be a co-conspirator in the facts of this case—

The Court immediately gave curative instructions to the jury which the government feels was adequate, more than adequate, and sufficient to instruct the jury to disregard that testimony.

We have been here two and a half days, and we have heard an enormous amount of testimony and data about a large number of people. Mr. Eason's name has come up before in context of tape recordings and other witnesses' statement and testimony, and evidence. And I don't think the incident that occurred today is any more prejudicial to the jury's understanding of the entire case than what they have already heard to this point in time.

I would suggest that there is perhaps a 50% chance of acquittal on any case. The jury may let it go.

THE COURT: Do you have those—may I see them? I am not going to speculate in that realm.

MR. LEE: No, sir, of course not. But we don't think it was prejudicial to the jury's understanding of the case.

R5–661–62.

As the body of our opinion indicates, there is no basis on which the prosecutor could have supported the introduction of the conviction. When the prosecutor asked the question, he should have known that he was eliciting inadmissible and highly prejudicial evidence. Lawyers are not just adversaries; they are the court's counsellors. The judge ought to be able to rely upon their counsel. Therefore, lawyers must not offer advice completely insupportable in the law. Further, government prosecutors in particular should remember their duties as reviewed at pages 735–736 and note 8.

12. Because of our disposition of appellant's first enumeration of error, we need not address the second enumeration. We also need not address appellant's third enumeration, the hearsay contention, because he will have the opportunity to challenge the evidence again if he is retried. We simply note that on retrial, if the alleged hearsay statements are admitted, counsel should take pains to see that the record contains evidence as to the nature of the conspiracy(ies)— one conspiracy or more.