United States Court of Appeals,

Eleventh Circuit.

No. 95-4648.

UNITED STATES of America, Plaintiff-Appellee,

v.

Maria J. De CASTRO, a.k.a Fifi, Defendant-Appellant.

April 30, 1997.

Appeal from the United States District Court for the Southern
District of Florida. (No. 94-320-CR-EBD), Edward B. Davis, Judge.

ON SUA SPONTE RECONSIDERATION

Before TJOFLAT and BLACK, Circuit Judges, and REAVLEY[*], Senior
Circuit Judge.

REAVLEY, Senior Circuit Judge:

The prior panel opinion, reported at 104 F.3d 1289, is
withdrawn, and the following opinion is substituted in its stead.
Appellant Maria De Castro complains that the district court erred
in failing to let the jury decide the element of materiality in her
trial for making false statements in violation of 18 U.S.C. § 1010.
In light of the Supreme Court's recent decision in *United States v.
Wells,*[1] we conclude that materiality is not an element of this
crime. We also conclude that the admission of evidence regarding
a government investigation was not plain error. Accordingly we
affirm.

BACKGROUND

De Castro was charged with conspiracy to make and making false

---

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for
the Fifth Circuit, sitting by designation.

[1]--- U.S. ----, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997).

statements to the Department of Housing and Urban Development (HUD), for the purpose of obtaining federally insured mortgages, in violation of 18 U.S.C. §§ 371 and 1010. She was convicted of conspiracy and five of the six substantive counts.

The government's proof showed that De Castro and others submitted applications for mortgages insured by the Federal Housing Administration (FHA), an agency within HUD, on behalf of low income applicants. The applications contained false employment information regarding the applicants. De Castro was a mortgage broker who acted as an authorized underwriter for the loans. De Castro, two real estate brokers, and several putative "employers" participated in the scheme to obtain the government-backed mortgages. The "employers" were business owners paid to submit false employment verifications that were part of the loan documentation. De Castro decided the amount of income indicated in these documents, so as to meet HUD requirements. She signed a certification form for each of the mortgages, stating that she had reviewed the case file and found that it met HUD's requirements. The real estate brokers, Virginia and Osvaldo Labrador, as well as several of the loan applicants and false employers, testified for the government. One of the brokers testified that "with [De Castro's] signature, the cases could be approved" by the FHA.

The district court instructed the jury that materiality was an element of the offense. The court further instructed that materiality was a question of law for the court to decide and that the court had already determined that the alleged false statements were material. The defendant objected to the instruction and moved

for a mistrial. Because it was then well-established in this circuit that materiality was a question of law,[2] the district court overruled the objection and denied the motion.

After the Supreme Court's decision in *United States v. Gaudin,* however, we now know that the Constitution requires the jury to determine whether a false statement is material if materiality is an element of the offense.[3]

ANALYSIS

A. *Materiality Is Not an Element of 18 U.S.C. § 1010*

Whether materiality is an element of 18 U.S.C. § 1010 is an issue of law reviewed de novo.[4] Section 1010 reads, in pertinent part:

> Whoever, for the purpose of obtaining any loan ... from any person ... with the intent that such loan ... shall be offered to or accepted by the Department of Housing and Urban Development for insurance, ... or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

As we noted in the prior panel opinion, the word "material" does not appear in the statute. However, in *Gevinson v. United States,* we upheld an indictment charging violations of § 1010 because "[m]ateriality, while not alleged *in haec verba,* is alleged

---

[2] *See United States v. Kramer,* 73 F.3d 1067, 1074 (11th Cir.1996) (noting that it was well-established that materiality was a question of law before *Gaudin* ).

[3] *United States v. Gaudin,* --- U.S. ----, ----, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995) (materiality under 18 U.S.C. § 1001 is a question for the jury); *Kramer,* 73 F.3d at 1074 (applying *Gaudin* to 18 U.S.C. § 1623).

[4] *See United States v. Hooshmand,* 931 F.2d 725, 737 (11th Cir.1991) (statutory interpretation is a question of law reviewed de novo).

in substance and this is sufficient."[5]  We stated that the evidence at trial was sufficient to make out a case "of knowingly and wilfully uttering and passing a false *material* statement with the intent to influence FHA in a transaction pending before FHA." [6]  Relying on *Gevinson,* we stated in *United States v. Black* that in order to obtain a valid conviction under § 1010, "it was necessary for the government to prove beyond a reasonable doubt that [the defendant] knowingly made a false statement concerning a *material* fact to HUD as charged in the indictment...."[7]

We have previously implied a materiality element into analogous false statement statutes.  For example, in *United States v. Swearingen,* we held that materiality was an element of 18 U.S.C. § 1344(a)(2),[8] and in *United States v. Rapp,* we listed materiality as an element of 18 U.S.C. §§ 1005 and 1014.[9]

---

[5]358 F.2d 761, 763 (5th Cir.), *cert. denied,* 385 U.S. 823, 87 S.Ct. 51, 17 L.Ed.2d 60 (1966).

[6]*Id.* at 765 (emphasis added).

[7]644 F.2d 445, 447 (5th Cir.), *modified on other grounds,* 651 F.2d 392 (5th Cir.1981) (emphasis added).

[8]858 F.2d 1555, 1556, 1558 (11th Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989).  At the time, 18 U.S.C. § 1344 stated:

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a federally chartered or insured financial institution;  or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $10,000 or imprisoned not more than five years, or both.

[9]871 F.2d 957, 963-64 (11th Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 184 (1989).  18 U.S.C. § 1005 reads in pertinent part:

In *Wells,* the Supreme Court held that materiality was not an element of § 1014. The Court expressly overruled *Rapp.*[10] It began its analysis with "a natural reading of the full text" of the statute, noting that the text of § 1014 does not contain an express materiality requirement.[11] It then rejected the argument that "at common law the term "false statement' acquired [an] implication of materiality that came with it into § 1014."[12] It noted that § 1014 was originally enacted by Congress as part of its recodification of the federal criminal code in 1948, and that materiality was included in other provisions involving false representations.[13] The Court therefore inferred that Congress had deliberately chosen not to include the term materiality in § 1014. It also noted that, despite amendments to the statute over the years, the core phraseology criminalizing "false statement[s]" made "for the purpose of influencing" the actions of enumerated institutions had

Whoever makes any false entry in any book, report, or statement of [any Federal Reserve bank, member bank, national bank or insured bank] with intent to injure or defraud such bank [or various government actors] shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1014 reads in pertinent part:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any [FDIC-insured bank] upon any ... loan shall be fined $5,000 or imprisoned not more than two years, or both.

[10]*Wells,* --- U.S. at ---- & n. 3, 117 S.Ct. at 925 & n. 3.

[11]*Id.* at ---- - ----, 117 S.Ct. at 926-27.

[12]*Id.* at ----, 117 S.Ct. at 927.

[13]*Id.* at ----, 117 S.Ct. at 928.

not changed.[14]  The Court also rejected the argument that implying a materiality element was necessary to prevent criminalizing relatively trivial or innocent conduct, and the argument that the rule of lenity was applicable.[15]

We conclude that the reasoning employed by the Court in *Wells* when it analyzed § 1014 applies with equal force to § 1010. Beginning with the text of the statute, § 1010, like § 1014, lacks an express materiality requirement.  Both were passed as part of the 1948 recodification, 62 Stat. 751-52.  Section 1010 criminalizes statements made to HUD by one "knowing the same to be false."  Section 1014 applies to one who "knowingly makes any false statement" to the agencies covered.  Like § 1014, § 1010 has been amended over the years,[16] but the core phraseology describing the conduct and *mens rea* of the defendant has not changed.  We can see no basis for requiring materiality under § 1010 when the Supreme Court has ruled that there is no such requirement under § 1014.  To the extent that *Gevinson* and *Black* hold to the contrary, we conclude that they have been overruled *sub silentio* by *Wells.*

B. *Admission of HUD Findings*

De Castro separately argues that the district court erred in permitting the government to introduce a HUD "finding" of fraud. Scott Kottman, a loan specialist and investigator for HUD, was the government's first witness.  He testified that he began an

---

[14]*Id.* at ----, 117 S.Ct. at 929.

[15]*Id.* at ----, 117 S.Ct. at 931.

[16]*See* 18 U.S.C.A. § 1010 historical notes (1976 & Supp.1997) (noting 1967 and 1994 amendments).

investigation after a large number of mortgage defaults in the Phoenix area. He noticed that the majority of the bad loans involved the same broker, Virginia Labrador, and that the same employers kept appearing in the files. He then discovered that home buyers were not employed where the files indicated, and linked the paperwork in the files to De Castro. Kottman testified that he investigated De Castro's company, Phoenix Mortgage, because of "[t]he unusually large number of false claims." He went on to testify that after the investigation De Castro was suspended from doing business with the FHA. The suspension letter was admitted into evidence without objection.

Citing *United States v. Christo*[17] and other authority, De Castro complains that it is error to allow the introduction of the results of an agency's "findings" in a criminal trial. She further argues that the error was compounded by the prosecutor's statements in his opening and closing arguments, such as the statement in opening argument that HUD "found evidence of fraud," and the statement in closing argument that HUD "concluded there was fraud on the part of Phoenix."

De Castro concedes that there was not a proper objection to the evidence or the argument of the prosecutor, and accordingly the plain error of review standard applies.[18]

In *Christo,* the defendant was convicted of misapplication of bank funds. The government's theory was that bank overdrafts in

---

[17]614 F.2d 486 (5th Cir.1980).

[18]*See United States v. Olano,* 507 U.S. 725, 730-32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

violation of a civil banking statute constituted criminal misapplication. The jury was further instructed that the civil violation could be considered in deciding criminal liability. The court found plain error based on "the inclusion of [civil] violations in the case," and "indeed the whole tenor of the trial."[19] In these regards *Christo* bears little similarity to our case. In our case the government never contended, nor was the jury instructed, that a violation of a civil statute was sufficient to establish, or even relevant to, guilt under a criminal statute made the basis of the indictment.

The error here, if any, does not rise to the level of plain error. Kottman did not testify that there was an agency finding of "fraud." The government offered extensive evidence from the participants in the scheme that De Castro submitted fraudulent documents to HUD. The prosecutor never argued that a HUD finding of fraud was sufficient to convict De Castro, and instead reminded the jurors in closing argument of the testimony of ten witnesses besides Kottman. Under the plain error standard, De Castro does not carry her burden of showing that the claimed error was prejudicial, meaning "that the error affected the outcome of the District Court proceedings."[20] Even if De Castro had met this prong of the plain error test, we should not exercise our discretion to correct a plain error unless the error seriously affected "the fairness, integrity or public reputation of judicial proceedings."[21]

---

[19]*Id.* at 492.

[20]*Olano,* 507 U.S. at 733-736, 113 S.Ct. at 1778.

[21]*Id.* at 730-32, 113 S.Ct. at 1776.

The error, if any, in allowing the evidence of the HUD investigation does not satisfy this last element of the plain error test.

AFFIRMED.