[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-5923

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 22, 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-00442-CR-EBD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAMION ANTHONY CAMPBELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 22, 2000)**

Before COX, GODBOLD and MESKILL[*], Circuit Judges.

PER CURIAM:

Damion Anthony Campbell appeals his convictions for importation of cocaine,

_____

[*] Honorable Thomas J. Meskill, U.S. Circuit Judge for the Second Circuit, sitting by designation.

in violation of 21 U.S.C. § 952(a), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a). We affirm.

## I. *Facts[1] and Procedural History*

Following Campbell's arrival at Miami International Airport on a flight from Jamaica, he was required to pass through United States Customs. There, he told a Customs agent that he had packed his own luggage and that everything in the luggage belonged to him. The agent searched one of Campbell's suitcases, found two packages of cocaine, arrested Campbell, and took him into the enforcement area. A second agent had observed the search and noted that as Campbell's suitcase was opened, Campbell appeared nervous and started looking around for points of exit. The second agent then searched Campbell's luggage; during this search, as a pair of shoes was examined, Campbell commented that nothing would be found in the shoes.

Approximately thirty minutes later, a third Customs agent read Campbell his *Miranda* rights; Campbell signed a waiver and agreed to make a statement. The agent wrote out Campbell's statement for him, in the third person, and included Campbell's comment that no one could have put anything in his suitcase. The agent also inserted his personal opinion in the statement, commenting that he had told Campbell that

---

[1] The facts are gleaned from the trial transcript.

"nobody gives this amount of cocaine to someone they don't trust." (R.2 at 60.) Campbell read the statement, requested a few additions, and signed the revised statement.

According to the third Customs agent, Campbell did two other things that were consistent with guilt. First, although Campbell gave the agent the name and description of the person who was supposed to pick him up at the airport, he refused to identify the person. Next, while transporting Campbell to jail, the third Customs agent and his partner discussed a pamphlet that described the penalties for smuggling drugs into foreign countries. When the third agent told Campbell that the penalty for smuggling drugs into Iran was death, Campbell responded that it did not pay enough to smuggle drugs into Iran.

At trial, the principal issue was whether Campbell knew that the cocaine was in his suitcase before it was discovered by Customs. One defense witness testified that he had seen another person tampering with Campbell's luggage during the trip to the Jamaican airport and that he had told Campbell about this. The other defense witness, Campbell's cousin, with whom he normally stayed during his visits to Miami, testified that the person who was supposed to meet Campbell at the airport telephoned her, desperately trying to locate Campbell, several times on the day of Campbell's arrest.

3

The jury convicted Campbell on both counts. Campbell appeals, arguing that the district court erred by admitting the Customs agent's hearsay opinion contained in his written, post-arrest statement and by permitting the Government to comment on his silence, depriving him of his Fifth Amendment right to a fair trial.[2]

## II. *Discussion*

Because Campbell did not object to these alleged errors at trial, we review only for plain error. *See United States v. De Castro*, 113 F.3d 176, 180 (11th Cir. 1997). To prevail, Campbell must prove three things: (1) an error, (2) that is plain, and (3) that affects substantial rights. *See Jones v. United States*, 527 U.S. 373, ___, 119 S. Ct. 2090, 2102 (1999) (citations omitted); *see also* Fed. R. Crim. P. 52(b). In order to "affect substantial rights," in most cases, the error must "have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777-78 (1993). Moreover, the Supreme Court has cautioned us to exercise our discretion to correct plain error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Jones*, 527 U.S. at ___, 119 S. Ct. at 2102 (citations omitted).

___

[2] Campbell also argues that the Government improperly commented on his failure to call additional defense witnesses to explain his lack of knowledge that the cocaine was in his luggage. In response to Campbell's objection at trial, the district court instructed the jury that Campbell had a right not to testify and that he had no obligation to put on any evidence. We conclude that the corrective instruction rendered any potential error on this point harmless.

4

Campbell's first contention of error is the admission of and emphasis on the Customs agent's opinion. Campbell argues that this hearsay opinion was improperly admitted as part of Campbell's post-arrest statement. The Government discussed this hearsay three times during the agent's trial testimony and again during closing argument. During closing, the Government treated the hearsay opinion as if it had been the agent's trial testimony. Finally, the trial was extremely short and, according to Campbell, the evidence of his guilty knowledge was not otherwise overwhelming. In light of these facts, Campbell contends that the admission of this hearsay opinion was plain error.

The Government responds that Campbell never objected to the admission of the opinion or its use by the Government and that the district court's admission of the statement was not plain error. The Government also argues that hearsay is not prejudicial if the declarant is available for cross-examination. *See United States v. Bright*, 630 F.2d 804, 815 (5th Cir. 1980) (holding that the admission of a hearsay statement over objection was not prejudicial because the hearsay problem was "adequately cured because [the declarant] was the next government witness and thus was available for cross-examination on that point."). Thus, the Government contends that because the Customs agent testified and was available for cross-examination at trial, no prejudice resulted from the admission of his hearsay statement.

5

We agree that the admission of the agent's opinion does not satisfy the plain error standard. Indeed, we do not think that any of the components of plain error are present. First, we are unwilling to say that a trial court's failure to sua sponte redact a defendant's statement to remove hearsay is error. And if it is error, it is certainly not plain; Campbell cites no authority supporting the notion that the trial court's failure to sua sponte redact a defendant's statement to remove hearsay is error. But, even assuming that the admission was an error that was plain, we cannot say that it affected Campbell's substantial rights for three reasons. First, the declarant Customs agent testified and was cross-examined. Second, the Customs agent could have stated the same opinion as an expert witness. Third, Campbell's knowledge that the cocaine was in his luggage could have been inferred from other evidence presented at trial.

First, Campbell cannot establish prejudice because the Customs agent who made the hearsay statement was called as a witness and was thoroughly cross-examined at trial. *See Bright*, 630 F.2d at 815. The jury heard and understood that Campbell's statement had been transcribed, in the third person, by the Customs agent. The agent acknowledged on the stand that he had inserted his own opinion into Campbell's statement. Furthermore, within the written statement, the agent clearly labeled his opinion as his own, writing, "Agent McKenney explained to the defendant that nobody gives this amount of cocaine to someone they don't trust." (R.2 at 60.)

6

Finally, the agent even admitted that individuals are sometimes unknowing couriers of illegal drugs. Accordingly, the jury had ample opportunity to understand that the agent's opinion was only the agent's opinion, not an admission of guilty knowledge by Campbell.

Second, we note that, at the time of trial, Agent McKenney had been a special agent for Customs for eleven years. His experience may well have qualified him as an expert under Fed. R. Evid. 702 to state opinions of this kind. Perhaps this is why Campbell's trial counsel raised no objection to the admission of the agent's opinion.

Finally, contrary to Campbell's contention that the evidence of his guilty knowledge was not otherwise overwhelming, substantial evidence supported the inference that Campbell knew the cocaine was in his luggage. Campbell told the agents that he had packed his own luggage, that everything in the luggage belonged to him, and that no one else had access to his luggage. A Customs agent, who observed the initial search of Campbell's luggage, testified that as Campbell's suitcase was opened, Campbell appeared nervous and started looking around for points of exit. The cocaine was found in one of Campbell's suitcases. Furthermore, Campbell's additional statements that there were no drugs in his shoes and that it did not pay enough to smuggle drugs into Iran, coupled with his refusal to identify the person who was picking him up at the airport, support the inference of Campbell's guilty

7

knowledge. The Customs agent's statement merely provided cumulative evidence of Campbell's knowledge.

In light of this other evidence that Campbell had knowledge of the cocaine, the context in which the agent's statement was presented to the jury,[3] and the agent's experience, we are not convinced that the admission and use of the statement contributed to Campbell's conviction.[4] Accordingly, we conclude that Campbell has failed to show the requisite prejudice to satisfy the plain error standard.

We emphasize, however, that our conclusion is not meant to condone the Customs agent's conduct in this investigation. It was improper for the agent to include his personal opinion regarding Campbell's guilty knowledge in Campbell's statement. But Campbell neither objected to the admission of the statement nor requested its redaction. The other evidence in the case was too substantial to permit a conclusion that admission of this agent's opinion seriously affected the fairness of this trial, and we respectfully decline the dissent's invitation to create a rule that would require district courts to independently police the admissibility of hearsay or risk reversal.

---

[3]    Although the dissent takes the Government to task for its *use* of the agent's opinion, hearsay, like any other evidence admitted without objection, can be used for any purpose and may be the subject of fair comment.

[4]    We do not agree with the dissent's position that this evidentiary error somehow rises to the level of "constitutional error," an argument not made by Campbell.

Campbell's second contention of error is that the Government improperly commented on his silence. Campbell complains that the Government used his silence as a theme, emphasizing his pre-*Miranda* silence, his post-*Miranda* failure to confess, and his silence in the face of the agent's comment. According to Campbell, this prosecutorial misconduct deprived him of his due process right to a fair trial.

Campbell concedes that the Government can use pre-*Miranda* silence to impeach a defendant. *See Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S. Ct. 2124, 2129-30 (1980). In the present case, however, Campbell did not testify, and he argues that, therefore, the Government could not have permissibly used his pre-*Miranda* silence. The Government responds that the Eleventh Circuit has noted that a prosecutor may, without restrictions, comment on a defendant's pre-arrest, pre-*Miranda* silence. *See United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991); *see also United States v. Simon*, 964 F.2d 1082, 1086 n.* (11th Cir. 1992) ("In *Rivera*, we held that 'the government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings.'" ). In turn, Campbell contends that *Rivera*, which cited only *Jenkins* in support of its broad use of pre-*Miranda* silence, was wrong. Fortunately, we need not sort out this confusion. In the present case, given *Rivera*, any error in the admission of Campbell's pre-*Miranda* silence was not plain. *See United States v. Humphrey*, 164 F.3d 585, 588

(11th Cir. 1999) ("A plain error is an error that is 'obvious' and is 'clear under current law.'") (citation omitted).

Finally, Campbell argues that the Government improperly commented on his post-*Miranda* silence. Campbell complains that, in closing, the Government highlighted his failure to deny ownership or knowledge of the cocaine at the Customs office. He also contends that if the Customs agent had actually interrogated him instead of merely implying his guilt, he would have invoked his right to remain silent. The Government argues that it did not improperly comment on Campbell's post-*Miranda* silence, as Campbell waived his right to remain silent and made statements that omitted (and, therefore, were inconsistent with) the defense offered at trial. We conclude that because the Government simply made explicit an inference that the jury could have drawn from the evidence, Campbell has not shown that his substantial rights were affected. *See United States v. Smith*, 700 F.2d 627, 633-34 (11th Cir. 1983) (noting that a lawyer in closing argument has the right to state his contention as to the conclusions that the jury should draw from the evidence).

## III. *Conclusion*

For the foregoing reasons, Campbell's convictions are

AFFIRMED.

GODBOLD, Circuit Judge, dissenting:

The government cannot be proud of this conviction. Governmental misconduct before and at trial deprived the defendant of due process and of the fair trial to which he is entitled.

The misconduct had two prongs. A government agent, the prosecution's leading witness, manufactured evidence tending to show defendant's guilt. Then, in a brief one-day trial, the government, with notice that the evidence was manufactured, utilized it repeatedly to strike at the heart of defendant's defense. This misconduct demands a new trial and this court should require it.

Defendant, a United States citizen, entered the United States at the Miami Airport, following a flight from Jamaica. Cocaine was discovered in his zippered suitcase. Consistently he said that he packed his own suitcase, he did not put the cocaine in his suitcase, it was not his cocaine, and he had no knowledge of it. The court's jury instructions clearly set out the issues: Count I, the defendant knowingly imported cocaine from a place outside the United States; Count II, the defendant knowingly and willfully possessed cocaine with the intent to distribute it. The trial judge explained that "knowingly" meant that the act was done voluntarily and intentionally and not because of mistake or accident. And he explained that "willfully" meant that the act was committed voluntarily and purposefully with the

11

specific intent to do something that the law forbids. The government inferred knowledge from the fact of possession. Campbell's defense was lack of knowledge.

This is a thin case on liability. It barely gets by sufficiency of the evidence requirements. The defendant did not testify but submitted evidence supporting his defense that without his knowledge someone had placed the cocaine in his suitcase and made him an unwitting courier.

## I. The manufacture of evidence

After Campbell was arrested and given a <u>Miranda</u> warning he made a voluntary statement. It did not follow the usual form of a suspect's writing what he chooses to say. Instead Customs Agent McKenney wrote down in third party form what he said Campbell had stated orally to him. According to McKenney, Campbell asked him (McKenney) to write for him. In the middle of McKenney's written statement describing what Campbell had said to him, McKenney improperly inserted his own volunteered statement expressing his opinion that Campbell necessarily had knowledge of the cocaine. Speaking as a purported expert and departing from his undertaking to record what Campbell said, McKenney inserted this:

> Agent McKenney explained to the defendant that nobody gives
> this amount of cocaine to someone that they don't trust. (R.2, p. 60).

In short, he inferred from the amount of the cocaine (approximately one-half kilo) that someone had entrusted it to Campbell and, because it was entrusted to Campbell he

12

necessarily had knowledge of it. This opinion – that amount equals entrustment and entrustment equals knowledge – became the core of the prosecution's case. When McKenney inserted his opinion into Campbell's statement there was no evidence that Campbell had been entrusted with the cocaine. It was egregiously improper for the agent to include in Campbell's statement his own opinion that lack of knowledge, the critical basis of Campbell's defense, was without merit. This manufacture of evidence was no less egregious than police manufacture of evidence by planting a "throw down" gun at the scene of a crime or forging a confession. In fact it was arguably more egregious because Campbell had asked McKenney to be the scribe for his statement, surely expecting that McKenney would perform the task as requested, and McKenney had abused that trust.

In this court the government has made no real attempt to explain or defend McKenney's misconduct in manufacturing evidence. Its lame explanation that McKenney was just reacting with a parenthetical response to what Campbell had said, and was trying to prompt Campbell to tell the truth, deserves no response.

## II. Use of the manufactured evidence at trial

Here is what happened at trial. McKenney was the government's representative at the counsel table. He testified in the government's case in chief, following testimony of the agents who had discovered cocaine in Campbell's suitcase. He identified the written statement signed by Campbell, and the government introduced it. (R.2, 58). The prosecutor then had him read the full statement to the jury on the ground, the prosecutor said, "For those of us who can't read your writing." (R.2, 58). These steps enabled the government to bring McKenney's statement into evidence without the usual predicates that are required to give validity to opinion evidence and to emphasize it by having the government's representative at trial read it aloud. Introducing Campbell's statement, with McKenney's statement included, and having him read it to the jury, were only the opening guns. The prosecutor then referred to McKenney's interjected comment and, as the government describes in its brief, the prosecutor "further elucidated the matter." This colloquy followed:

> Q.   . . . What, if anything, did you explain to the defendant?
>
> A:   At this time, I explained to defendant that nobody gives this amount of cocaine to someone they don't trust.
>
> Q:   And did you put this into the written statement that the defendant signed?

14

A. Yes, I did. (R.2, 60).

The prosecutor referred to McKenney's statement a fourth time by having him re-read his interjected statement:

> Q: Would you please read that part of the statement that reflects that conversation?
>
> A: "Agent McKenney explained to the defendant that nobody gives this amount of cocaine to someone that they don't trust." (R.2, 60).

There followed four questions and answers concerning the amount of money that defendant had in is possession and a question concerning where defendant was to stay in Florida and who was to pick him up at the airport. The following colloquy then occurred, the fifth reference to McKenney's statement. This time McKenney added a new volunteered statement directed to the basis for his opinion as an expert.

> B: What, if anything, did you ask the defendant about this individual who was supposed to pick him up, Sidney Bourne?
>
> A: That's when I went back to the statement that nobody gives -- in my experience working in the airport, nobody gives that amount of cocaine to someone that they don't trust. (R.2, 61).

The prosecution got in its sixth lick in oral argument to the jury. The prosecutor told the jury:

> Ladies and gentlemen, the defendant's own

15

> statements would indicate he knew that the cocaine was in his luggage. As the agent testified, you don't trust a half kilo of cocaine to someone that you don't know. (R.2, 125).

The majority acknowledge that "During closing, the Government treated the hearsay opinion [of McKenney] as if it had been the agent's trial testimony."

At no point did the prosecutor suggest that the statement be redacted to remove McKenney's inserted remark.

Campbell did not testify. But he submitted evidence supporting his lack of knowledge defense. Donald Parker, an electrician whose place of business in Jamaica is close to Campbell's, testified that he drove Campbell to the Jamaican airport about two hours distant from where Campbell lived. Parker's vehicle was a pick-up truck with a camper top. On the way Campbell asked Parker to stop at the home of Sidney Bourne, Campbell's cousin, to pick up an engine block to be repaired in the United States. Sidney's brother, Alden, carried the engine block out of the house, accompanied by an unknown person. The engine block was placed in the back of the truck where Campbell's luggage had been placed. Campbell sat in the passenger seat of the cab, and the two passengers sat in the back of the truck. On the way to the airport the unknown person was dropped off at his request. Parker, Campbell and Alden Bourne continued, with Alden sitting in the back of the truck. Parker, the driver, noticed that Campbell's luggage had been opened and a pair of

16

jeans had been pulled out. He told Campbell what he had seen. Campbell looked through the window in the back of the cab and observed that he did not see the suitcase opened and that it was closed.

Campbell carried the engine block to Miami along with his suitcase. Campbell was to be met at the airport in Miami by Sidney Bourne, and he was to go to the home of a female relative with whom he stayed whenever he was in Miami. When Campbell was arrested he gave the Customs officers Sidney Bourne's name and description. However, he declined to point him out to the officers.

The jury could infer from the evidence that Campbell was the victim of a scheme pursuant to which, without his knowledge, Alden Bourne, or the unidentified third person, opened the zippered suitcase, wrapped the cocaine in the jeans, and slipped the package back into the suitcase. It could infer that Sidney Bourne was to meet Campbell at the Miami airport and extract the cocaine from the suitcase without Campbell's knowledge.

McKenney's inserted opinion was only one sentence. But it went to the heart of Campbell's defense. It had persuasive power because McKenney was the senior Customs agent and had been called to take over the investigation after the cocaine was discovered. At trial he sat at the counsel table. The most compelling evidence of the importance of his statement is the government's repeated use of it and

17

emphasis of it.

The government's actions at trial are no less egregious than the manufacture of evidence. This is not a case where someone blurted out a surprise remark. The prosecutor acted deliberately. She had possession of the statement and surely knew from its face that it was tainted. After introducing the document she had McKenney read it to the jury on the premise of poor handwriting. Then, as the case proceeded, all the way through closing argument, she repeatedly hammered home McKenney's statement of his opinion. A simple motion to redact would have cured the taint, but she made no motion and, to the contrary, used the tainted remark for the upmost benefit.

The government's justifications for use of the tainted statement at trial are no more convincing then the excuses for manufacturing evidence. The government says it was "impeaching a defense." But McKenney's statement was introduced in the government's case-in-chief. The government introduced a largely exculpatory statement then sought to impeach its exculpatory content by McKenney's inserted remark. In U.S. v. Crutchfield, 26 F.3d 1098 (11th Cir. 1994) the prosecutor attempted to justify improper questioning of a witness by stating that he was "anticipating" that defense counsel would use the subject matter of the question in an effort to impeach the witness. He claimed to have introduced the substance of the

18

message to "draw the sting" from this anticipated attack. The court struck the testimony, gave a curative instruction, and warned the prosecutor to be more careful of what he brought up "in anticipation of a defense."

### III. The decision of this court

This court errs in its treatment of the <u>manufacture</u> of evidence and the <u>use</u> of that evidence at trial with knowledge of its taint. As to manufacture of evidence, the court passes over McKenney's misconduct in two sentences, one saying that he shouldn't have done it and the second saying this court doesn't condone it. This powderpuff treatment trivializes the wrong by an experienced agent of our government. It disposes of use of the manufactured evidence at trial on the ground that since defendant did not object or ask for redaction the plain error rule applies and the statement really didn't hurt Campbell very much. The court does not even recognize the prosecutor's wrong in repeatedly making use of what she knew to be manufactured evidence. Instead the court excuses prosecutorial misconduct (n. 3) by saying that since the evidence was admitted without objection it could be used for any purpose. Surely this procedural rule cannot immunize the government from the wrong of using evidence that it knows is tainted.

This court does not adequately treat an error of constitutional dimension. It minimizes the governmental misconduct. It does not recognize that government

19

manufacture of evidence plus subsequent use of it at trial with knowledge of its taint is a constitutional wrong. It does not utilize the correct standards for judging a constitutional wrong. It does not consider whether the overall government misconduct is harmless beyond a reasonable doubt.

IV. Standards governing constitutional errors

There are some constitutional errors that cannot be categorized as harmless error. Chapman v. California, 386 U.S. 18 (1967) noted three: using a coerced confession against a defendant in a criminal trial, depriving a defendant of counsel, and trying a defendant before a biased judge. Later cases have added other constitutional errors not subject to harmless error: The right to self-representation at trial, McKashie v. Wiggins, 465 U.S. 168, 177-78 (1984); failure to instruct a jury on the reasonable doubt standard, Jackson v. Virginia, 443 U.S. 307, 320 (n. 14) (1979); unlawful exclusion of members of the defendant's race from the grand jury that indicted him, despite overwhelming evidence of guilt, Vasquez v. Hillery, 474 U.S. 254 (1986); denial of public trial, Waller v. Georgia, 467 U.S. 39, 49 (1984). See also Tumey v. Ohio 273 U.S. 510, 535 (1927) (trial before a judge with a financial interest in the outcome); Sparf v. U.S., 156 U.S. 51, 105 (1895) (erroneous entry of a judgment of conviction by the judge or a direction to the jury to convict, directing the jury to do so in a criminal trial). But see Arizona v. Fulminante, 499

20

U.S. 279 (1991) (the Supreme Court, in a five-four decision, withdrew from this class of cases in which constitutional error cannot be considered as harmless error the use of a coerced confession).

We should hold that government manufacture of incriminating evidence that is subsequently introduced at trial with knowledge that it has been manufactured is a constitutional error and not subject to the harmless error rule.[1] If, however, the manufacture and knowing use of such tainted evidence, combined together, is subject to the harmless error rule, that is not the end of the matter. Chapman requires that the error must be harmless beyond reasonable doubt.

This court and the Supreme Court have applied Chapman in numerous contexts, with many different characterizations of what "harmless error beyond reasonable doubt" means. "The court must be convinced that error did not contribute to the defendant's conviction." U.S. v. Burgess, 175 F.3d 126 (11th Cir. 1999). In Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) the test was "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." In Cape v. Frances we phrased the test in this fashion: "We must consider 'whether,

---

[1]    I do not need to address in this case whether the government's use of any manufactured  evidence, whatever the source, with knowledge of its taint, is a constitutional violation.  In this case the constitutional error is double barreled, manufacture and use.

absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so outstanding as to establish the guilt of the accused beyond reasonable doubt.'" (741 F.2d 1287, 1294 (11th Cir. 1994) (quoting Harryman v. Estelle), 616 F.2d 870, 875 (5th Cir. (en banc), cert. denied, 449 U.S. 860 (1980)).

In many Chapman-based cases repetition of the error is determinative or highly significant. Hill v. Turpin, 135 F.3d 1411 (11th Cir. 1998) (several references to defendant's post-Miranda request for counsel and assertion of right to silence); U.S. v. Tenorio, 69 F.3d 1103, 1106-07 (11th Cir. 1995) (repeated references to post-Miranda silence).

In U.S. v. Mills, 138 F.3d 928, 939-40 (11th Cir. 1998), Judge Cox set out and applied five factors that I apply to this case. (1) How important was the witness' testimony to the prosecution's case? It was vital. (2) Was other testimony cumulative? No. (3) Was there corroborating evidence to the testimony in question? No. (4) What was the extent of cross-examination? Minimal or none on the subject matter. (5) What was the overall strength of the prosecution's case? Very thin.

The evidence in this case does not meet the Chapman test. The evidence is not overwhelming. The prosecution repeatedly utilized government-tainted evidence

with knowledge of the taint.

V.  Departure from our standards concerning prosecutorial misconduct

For at least half a century this court, and its predecessor the Fifth Circuit, have dealt head on with prosecutorial misconduct and its consequences.  We have taken to heart the often-quoted language of the Supreme Court in Berger v. U.S.:

> A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously.  But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused.  Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer.  In this case zeal outran fairness.  The argument of the United States attorney in the district court was improper, prejudicial, and constituted reversible error.

205 U.S. 78, 88 (1935).

In Handford v. U.S., 249 F.2d 295 (5th Cir. 1957) the charge was illegal possession of nontax paid whiskey.  The critical issue was whether the defendant had dominion and control.  As in the present cases, the evidence was "far from conclusive" and the court held that the jury might have found that defendant did not in fact have such dominion and control as to constitute possession.  The prosecutor had appealed to racial prejudice and argued that "too many of the prosecutor's

23

friends' children got run over up and down the highways." Quoting from <u>Berger</u> the Fifth Circuit reversed the conviction because "zeal outran fairness."

In <u>Dunn v. U.S.</u>, 307 F.2d 883, 885 (5th Cir. 1962) one of the grounds for reversal was an inflammatory opening statement by the prosecutor. The court reversed, relying upon <u>Handford</u>.

In <u>U.S. v. Eason</u>, 920 F.2d 731 (11th Cir. 1990), the government, while cross-examining the defendant, introduced evidence that the defendant's father-in-law had been convicted of similar offense. Prosecutorial use of the offensive material was similar to that in this case.

> The problem confronting [the court] was not the result of inadvertence; no witness volunteered or "blurted out" the fact that Eason Sr. had been convicted. The government deliberately introduced Eason, Sr's conviction.

<u>Id</u>. at 734. The court reversed. It "felt obligated" to remind the United States attorneys of their duty in a criminal prosecution and quoted the language from <u>Berger</u>. <u>Id</u>. at 735-36.

Some cases of improper conduct have not been reversed because there was overwhelming evidence of defendant's guilt and, in some cases, a curative instruction as well. <u>See</u> e.g., <u>U.S. v. Alexander</u>, 835 F.2d 1406, 1410 (11th Cir. 1988) (overwhelming evidence of defendant's guilt); <u>U.S. v. Cotton</u>, 770 F.2d 940, 948 (11th Cir. 1985) (jury instruction given and evidence of defendant's guilt

24

overwhelming); U.S. v. Tutt, 704 F.2d 1567, 1569-70 (11th Cir. 1983) (prosecutorial misconduct by single reference in opening statement, curative instruction, identification of defendant by several witnesses, and overwhelming evidence); U.S. v. Nooks, 446 F.2d 1283, 1289 (5th Cir. 1971) (circumstances reeking of guilt). The evidence in the instant case was not overwhelming, and no instruction was given concerning McKenney's statement of opinion.

This court departs from the policies of the past concerning governmental misconduct. The government agency and its agents are responsible that evidence is not manufactured. It is the prosecutor's responsibility that evidence known to have been manufactured will not be used. It is she who is duty bound to clean up the evidence by asking for redaction. The trial court must be alert that manufactured evidence is not used. The decision in this case shifts to defense counsel the total onus for infection of a criminal trial by governmental conduct that he neither caused nor contributed to. It is wrong that agencies of government are permitted to seek and gain advantage from their misconduct and suffer no consequences. It is wrong that sole responsibility for a tainted trial is shifted to defense counsel because he was not a sufficient gatekeeper to prevent the use of evidence that should have been neither created nor used.

This is a shabby case. Our government can do better then this. It would have

elevated itself by confessing error, thereby sending a signal to its agent that it demands rectitude from those who gather evidence for our judicial system and those who use it. Absent that response this court should say that what occurrence in this case was wrong, and that the responsibility for it should not be shifted to defense counsel but should reverse and remand for the fair trial to which defendant is entitled.